STATE, RESPONDENT, v. FISHER ET AL., APPELLANTS.

(No. 4,070.)

(Submitted November 7, 1917.   Decided November 19, 1917.)

[169 Pac. 282.]

*Criminal Law—Murder in First Degree—Evidence—Motion to Strike—Cross-examination—Harmless Error—Instructions.*

Homicide—Evidence—Cross-examination—Harmless Error.

    1.   Error in refusing to compel a physician to answer a question on cross-examination, after testifying on direct that deceased had come to his death by septicemia due to a gunshot wound, whether he knew that the victim of the homicide was suffering from acute or chronic nephritis, was rendered harmless by the failure of counsel to pursue the inquiry further.

    [As to fact that death resulted from supervening cause as defense to charge of homicide, see note in Ann. Cas. 1916C, 692.]

Same—Trial—Evidence—Motion to Strike—When Too Late.

    2.   Motion to strike testimony admitted without objection comes too late.

Same—Defendants' Conduct and Declarations—Admissibility.

    3.   Evidence of defendants' declarations and conduct at the time they were identified by a witness as the men whom he saw running from the scene of the crime was admissible.

Same—Cross-examination—Harmless Error.

    4.   Though error was committed in refusing a police officer to state on cross-examination whether at the time defendants were identified by decedent at the hospital within a day or two prior to his death he seemed to be under the influence of a drug, the error was insufficient to work a reversal of the judgment where counsel made no effort thereafter to show the condition of decedent at that time.

Same—Instructions—Proper Refusal.

    5.   Where defendants, charged with homicide, were either guilty of murder in the first degree or innocent, instructions upon murder in the second degree and upon manslaughter were properly refused.

*Appeal from District Court, Silver Bow County; J. V. Dwyer, Judge.*

FRANK FISHER and JOHN O'NEILL convicted of murder in the first degree, appeal from the judgment of conviction and an order denying their motions for a new trial. Affirmed.

*Mr. S. C. Ford,* Attorney General, and *Mr. Frank Woody,* Assistant Attorney General, submitted a brief; *Mr. N. A. Rotering,* Assistant County Attorney for Silver Bow County, argued the cause orally.

*Mr. D. J. McGrath, Mr. Alex. Levinski, Mr. C. K. Tuohy* and *Mr. John A. Groeneveld,* for Appellants, submitted a brief; *Mr. Groeneveld* argued the cause orally.

MR. JUSTICE SANNER delivered the opinion of the court.

Some time between 7 and 9 o'clock in the evening of September 3, 1913, two men—one tall and one short—were observed by a Mrs. Henry Stone near the old Tabernacle, at the corner of Wyoming and Porphyry Streets, in the city of Butte, engaged in a "hold-up," in the course of which Thomas Higgins was shot. The two men ran away, crossing the vacant lot which lay west of the Tabernacle, to the alley which passes the rear of the Oxford Hotel. The scene is sketched below. Point A shows approximately where the shooting occurred; point B, Mrs. Stone's place of observation, and the dotted line from point A, the line of flight as indicated by her.

At about the point C were two men, the witnesses Davis and Giles; Davis heard the shooting, and Giles saw it; within a

very few minutes both noticed two men—one tall, one short—come rapidly from the direction of the Tabernacle into the alley and pass on toward Silver Street; one of them (the short man) told Giles "to run down there and see how bad this man was shot"; upon the trial, Giles claimed to be uncertain whether the appellants were the two men he had thus seen, but his testimony leaves the indelible impression that they were. Giles went down to the Tabernacle, found Higgins and remained there until Higgins was removed to the emergency hospital shortly afterward. Some time about 11 o'clock the appellants Fisher (who is tall) and O'Neill (who is short) were arrested and searched; but no weapons were found upon either. On the following day Fisher and O'Neill were taken before Higgins who identified O'Neill as the man who had shot him, but was not sure about Fisher. O'Neill responded: "Brother, look here; this is a very serious proposition; be careful, you know, and be sure"; Higgins rejoined: "I am quite sure; it was either you or your ghost." The appellants were also taken to the office of the county attorney and there pronounced by Giles to be the men he saw run up the alley right after the shooting, whereupon Fisher exclaimed: "That son-of-a-bitch of a nigger; but for him they wouldn't have hardly any evidence against me at all. If I ever get out of this trouble I will kill Jerry Murphy" (the chief of police). Toward the last of September the appellants, pursuant to a promise made them by the officers, were again taken before Higgins in the St. James Hospital; Higgins had been told that the officers did not wish the appellants inculpated unless they were the guilty parties, yet upon their presentation Higgins said to O'Neill, "You are the man that laid me here in bed; you are the man that shot me, I am positive of that," to which O'Neill answered: "This is a very serious proposition; be careful. Are you sure I am the man?" and Higgins rejoined: "You are the man." Within a day or two thereafter Higgins died, the cause of his death being septicemia due to the gunshot wound received on the night of September 3.

The foregoing, which constitutes an outline of the state's case, the appellants endeavored to meet by their testimony alone; and the effect of their testimony is to deny presence at or complicity in the shooting, and to dispute the evidence of their identification out of court by Higgins and Giles. Many of their statements touching their whereabouts at the time of the homicide should, if true, have been susceptible of corroboration; but none was offered. In some respects their testimony did not agree with their previous statements to the county attorney, or with the facts, if the state's witnesses are believed. What their demeanor on the stand was we, of course, are unable to say. One serious contribution, however, they did make to the case, *viz.*: Both testified that on September 3 they were continuously together from about 4 o'clock in the afternoon until their arrest at about 11 o'clock that night.

On the whole evidence the jury found both the appellants guilty of murder in the first degree, leaving the punishment to be fixed by the court. They were adjudged to pay the extreme penalty, and from the judgment as well as from an order denying their motions for new trial, these appeals are taken. Thirty-five alleged errors are assigned, many of which are obviously without merit. Those which suggest matters of any consequence follow:

1. Dr. C. A. Johnson was called as a witness for the state and [1] testified the cause of Higgins' death to be as stated above; on cross-examination he was asked: "Do you know that this man was suffering from acute nephritis or chronic nephritis?" An objection to the question as "immaterial, no defense to this action, and not cross-examination" was sustained, and the inquiry was not pursued further. Johnson had made no statement about nephritis, and counsel now say that "what his answer would have been is problematical"; they insist, however, that the ruling was erroneous because it excluded an inquiry into the true cause of Higgins' death. From the latter point of view the question was not open to the objections made; but since the purpose was not clear, the matter was not pursued

any further, the answer was problematical, and the appellants made no effort in their defense in dispute the cause of death, we cannot see that any substantial injury was done them by the ruling.

2. By motion to strike the testimony of the witness Malloy and by objections to questions asked the witness Prlja, the appellants endeavored to exclude the confrontation of them by Giles in the county attorney's office; particularly was it sought to exclude the declarations and conduct of the appellants at the time, and failure in that behalf is the basis of vigorous [2] complaint. The complaint is without merit. Malloy's testimony went in without objection, no notice being taken of it until the close when the motion to strike the whole was made; it was then too late. (*Poindexter & Orr Livestock Co.* v. *Oregon Short Line Ry. Co.*, 33 Mont. 338, 341, 83 Pac. 886.) Passing that, however, the evidence of both Malloy and Prlja was clearly admissible. (Rev. Codes, sec. 7887, subd. 3; *State* v. *Pepo*, 23 Mont. 473, 480, 59 Pac. 721; *State* v. *Lucey*, 24 Mont. 295, 302, 61 Pac. 994; *State* v. *Willette*, 46 Mont. 326, 331, 127 Pac. 1013; *People* v. *Byrne*, 160 Cal. 217, 116 Pac. 521, 529.)

3. So, too, and upon the same authority, there was no error in receiving the evidence touching the identification by [3] Higgins at the St. James Hospital. Counsel insist here and objected below upon the ground that no foundation had been laid for this, considered as a dying declaration. Whether this was correct we need not decide, because the evidence was admissible as showing the conduct and declarations of Higgins within the observation of the accused, and their conduct in relation thereto—all touching a matter vital to the issues in this case.

4. The policeman, Prlja, having testified to the occurrence [4] at St. James Hospital, appellants' counsel sought to ascertain on cross-examination whether Higgins at the time seemed to be under the influence of some drug. This was not permitted, and was error, but we cannot hold it sufficient to warrant reversal. Here again the answer was "problematical"; the

appellants had ample opportunity thereafter to show by this witness, by others claimed to be present at the same time, and by the nurse's chart—the best evidence upon the subject—what the condition of Higgins was; they did not choose to avail themselves of that opportunity or to raise the question in any form as a substantive fact in the case.

5. The most vigorous contention in the briefs relates to the [5] refusal of the court to instruct upon murder in the second degree and upon manslaughter. But there is really nothing in it. The defense was that the appellants were not present and had no part in the shooting. Either this was true or it was untrue. If it was true, the appellants are innocent. If it was untrue, the appellants are guilty of murder in the first degree. There was no middle ground. In such a situation the court need not, and should not, give instructions which would authorize a verdict meaningless from any logical point of view. (*State v. Calder*, 23 Mont. 504, 59 Pac. 903; *State* v. *McDonald*, 51 Mont. 1, 149 Pac. 279.)

6. Complaint is also made of the refusal of certain other instructions, but we find that the substance of them, so far as proper to be given, was fully covered by the charge.

7. Discussing the refusal to grant a new trial, appellants insist that the evidence is utterly insufficient to justify the verdict, and particularly to justify the imposition of the extreme penalty. With the penalty we have nothing whatever to do, so long as it complied with the statute prescribing punishment for the crime of which the appellants stand convicted. It may be that, considering the possibility of error in all human testimony, one could wish to avoid the infliction of death; but there cannot be the slightest doubt that as a matter of law the evidence was sufficient to justify the verdict, to establish that Higgins was fatally shot by O'Neill while O'Neill and his companion were engaged in the perpetration, or attempt to perpetrate, a robbery. Since both O'Neill and Fisher admit and insist that Fisher was with O'Neill at the hour the homicide

· occurred, Fisher must have been the companion of O'Neill in the affair and is likewise guilty.

The judgment and order appealed from are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.

Rehearing denied December 15, 1917.