### GARNER *v.* STATE.

[83 South. 83, In Banc, No. 20900.]

1. CRIMINAL LAW. *Res gestœ. Statement after offense.*
   On the trial of a prosecution for rape, it was not harmless error to allow the mother of the injured girl to testify that the girl in her presence had charged the defendant with the crime, which charge he then and there denied.

2. CRIMINAL LAW. *Argument of district attorney. Appeal to race prejudices.*
   In a prosecution for rape it was error for the court over objection, to allow the district attorney in his argument to the jury to go out of the record and appeal to racial prejudices and southern sentiment upon the crime of rape.

APPEAL from the circuit court of Jackson county. HON. D. M. GRAHAM, Judge.

Callie Garner was convicted of rape and appeals.

The facts are fully stated in the opinion of the court.

*Mize & Mize,* for appellant.

We will discuss the first five assignments of error together, which discussion continues the following legal proposition, to wit: Was it competent to permit Sarah Reed to charge Callie Garner as being the author of the alleged crime at a time when Callie Garner vigorously denied it?

If there is one proposition that the law of evidence settles, without any contrary opinion or minority authority, it is when a crime has been committed and the defendant is charged with it and then and there denies it that the said evidence is not admissible. This has been settled in two leading cases in the state of Mississippi.

In *Brown* v. *The State,* 78 Miss. 637, is the case where Jonah Brown, with two others, was indicted for the

murder of Sid Harden, and two officers, Seal and Duck-
worth, who had arrested the defendant, carried him to
the house where Harden was mortally wounded and
asked him if he knew Brown, when Harden accused
Brown of shooting him for nothing, Brown thereupon
denied the accusation. This testimony was admitted by
the lower court, and the supreme court, by Justice TER-
RAL, reversed the case for the admission of this testimony,
and used, at page 639, the following language: "If A,
when in B's presence and hearing, makes statements
which B listens to in silence, interposing no objections,
A's statements may be put in evidence against B when-
ever B's silence is of such a nature as to lead to the
inference of assent." (citing authority) but there is no
assent to the charge made by Harden; on the contrary,
the defendant denied the charge as soon as made," just
as in the instant case. This case has been re-affirmed in
the case of *Johnson* v. *The State,* 90 Miss. 317, where the
defendant was charged with particiating in a crime, but
denied it, which evidence was by the lower court admitt-
ed, and on account of its admission this court reversed
it.

In the case of *Mumford* v. *The State,* 70 Fla. 424, 70
So. 399, was a similar case where the defendant was
charged with a crime, but denied it. The supreme court
of Florida for the admission of such evidence in re-
versing it said it knew of no authority to the contrary.

Also see 24 L. R. A. 235, Slso Corpus Juris., p. 634,
lays down the rule citing many authorities to the same
effect and none to the contrary. Also 2 Wigmore sec.
1072, top of page 1261, in a masterly discussion, lays
down the same rule. Also Chamberlain on Evidence,
sec. 1401, lays down the same rule with no authority
to the contrary. Also *People .1. Tashara,* 66 Pac. 798;
*People* v. *Ayhens,* 117 Pac. 789; *People* v. *Turner,* 82
Pac. 397; 3 Encyclopedia of Evidence, bottom pp. 299-
300, where authorities are collated in note and none to
the contrary.

This evidence was vigorously objected to where the witness was asked the following questions: "Question; When did you first report to your mother in the presence of Callie Garner " (Objected to. Objection overruled) "Answer: That night when she came in, he was in the other room but he heard it." Appellant moved to exclude the answer of the witness, but it was overruled. Thereupon the witness was permitted to go on to say that her mother called Callie Garner and asked him about it, and that her mother replied that she was going to take the prosecutrix to the doctor; thereupon the appellant said if the doctor said he had done it, he was lying.

The question that led up to this answer was objected to, and when the answer came out, the defendant moved to exclude it, and the court remarked: "I will exclude that part of the answer as to what her mother said," which did not exclude that Callie Garner was charged with the crime and denied it; but after the court used the following expression "I will exclude that part of the answer as to what her mother said," the following question was asked: "What statement did you make to your mother in his presence?" which was objected to and overruled. The witness stated that her mother called him, and he came as far as the middle door, and she asked him, whereupon the witness was interruped, and the following question was asked: "Question; What did you say at that time, did you tell your mother what had happened?" "Answered: Mother asked me if he done it and I told her he had done it." Appellant moved to exclude this answer, which was overruled.

It was error to permit the district attorney to use the following language, to wit: This fiend and brute (pointing to defendant at the bar of the court) is guilty of raping this little girl. Oh, it is nothing now a days, and not uncommon thing, to pick up a newspaper and see where some brute has committed this crime;" (ob-

jected to by defendant's counsel; the court remained silent). Continuing the district attorney said. ''You see it South, North and East, where a brute of his race has committed this fiendish crime. Are you going to turn him loose on the public?''

This is about as flagrant a violation of the province of the district attorney as any record that has ever been before this court. The learned district attorney, without any provication at all from the appellant, whose duty it is to see a fair and impartial trial between the defendant and the state, representing the defendant and his rights as much as the state and its rights, so far forgot himself as to transgress his province as to make it the imperative duty of the court to reverse this case. Courts cannot be too careful in trying cases of this nature. While it is permissible for the district attorney to use invective of the Edmond Burke Type on Warren Hastings, yet such invective as this has limits and bounds as all things terrestrial. No language could have been more forcible to secure conviction in Mississippi than this anguage, taking into consideration the the times and temper of the jurisdiction wherein this defendant was tried. A heated state campaign where the race question was prominently before the people, and a number of crimes having been committed by the negro race in various sections of the United States, and more particularly in the South and in Mississippi; and this court cannot shut its eyes to this situation, as it is such common knowledge that it is almost judicial knowledge; and for the district attorney to retrospect from the newspapers over the country, or the press of the country, wherever it might be, South, North, or East, it finds where a brute of his race had committed this fiendish crime, and then in a powerful appeal, to wit: stating ''are you going to turn him loose on the public,'' could not be without telling effect.

The district attorney ought never to refer to the defendant charged with a capital crime as a brute, and then follow this up by telling them that it is nothing now a days uncommon to pick up a news paper and see where some brute has committed the crime, and then appealing to them by saying that if they would look South North or East they would find where a brute of his race, to wit, the negro race, had committed the crime of this kind, and then with a powerful appeal stating "are you going to turn him loose on the public?" After this it is a wonder that the jury did not hang the negro as three of them wanted to. See *Sykes* v. *State,* 89 Miss. 766; *Harris* v. *State,* 96 Miss. 379; *Hardway* v. *State,* 54 So. 833; *Hampton* v. *State,* 88 Miss. 257.

The verdict is contrary to the law and the evidence. This verdict should not be permitted to stand. It wholly depends on the testimony of the prosecurix, who is contradicted by Dr. Tabor, she saying that she never had intercourse before, and the Doctor saying that from his examination she was bound to have. Her mother contradicts her as to what disposition was made of the bloody clothing, at page 41; her mother says that the clothes were washed before the girl was carried to the Doctor, and at page 36 the girl says they were washed the next week and it is so unreasonable that after this crime was committed that they would charge the appellant with it and then stay in the house with him two days without making some outcry to the neighbors, and affiant vigorously denying it. We submit on the foregoing that this case should be reversed and remanded.

*R. M. Bordeaux,* Asst. Attorney-General, for the state.

We respectfully submit that a careful perusal of this record makes such a case as vindicates the stablishment and enforcement of Rule No. 11 of this court. In our opinion this is a case weye the guilt of the accused is

established beyond every reasonable doubt, and a case in which no other verdict could have been returned but that of guilty.

The prosecutrix in this case was a negro girl, eleven years old at the time of the commission of the effense upon her. She lays the scene of the crime, the time of the crime, the party committing it, and all the facts and circumstances surrounding it and her conduct afterwards, in such a manner as to stamp her statement with truth and carry conviction to the mind.

The defendant was rooming at the house of this girls' mother. In the early morning before the prosecutrix had arisen when the mother of the child had gone to her work and when the co-occupant of the house had gone for some water, or some other errand, defendant and prosecutrix were alone in the house save for an infant in arms; upon the mother's return complaint was made by prosecutrix and the condition of her clothes and her parts confirmed her statement that she had been ravished.

It is inconceivable to us that this eleven-year-old negress could or would frame up this tale on the defendant. That she had been ravished there is no doubt and that this appellant was with her alone at the time of the alleged ravishment there is also no doubt, and he was alone with her at a time and under circumstances that aroused and prompted the effort to satisfy his brutal instincts.

If there be error in the admission of certain evidence could that error have in any wise prejudiced this accused or could any other result have been rightfully reached in this case?

With respect to the criticism of the remarks of the distict attorney, it occurs to us that while the remarks of the district attorney were probably harsh yet under the facts of this case, his remarks were not such as deprived this defendant of a fair and impartial trial.

This was an atrocious crime and the perpetrator of it was a brute and the spokesman for organized society, under the facts of this case, had a right to appeal to the jury for the protection of society against a person who would perpetrate such a crime.

We appreciate that this court has often, and rightfully adversely criticised the remarks of district attorneys in their closing remarks to juries, but we do not believe that this court would draw the line of propriety so tight as to seal the lips of the state in an appeal to the jury for protection and for law and order.

We submit that this appellant was fortunate that the jury disagreed as to punishment.

Cook, P. J. delivered the opinion of the court.

The grand jury of Jackson county presented an indictment against the appellant charging him with the crime of rape. The alleged victum of this shocking crime was a girl under the age of twelve years. The trial jury returned a verdict of guilty, but disagreed as to the punishment, and the court sentenced defendant to life imprisonment in the penitentiary.

There was ample legal evidence given to the jury to warrant the verdict, and unless incompetent evidence was admitted, or something improper was said to the jury by the district attorney in his closing argument, the judgment of the court would be affirmed.

The record discloses that the defendant was confronted with the victim of the rape, and she then and there charged him with the crime. The record also shows that the defendant promptly denied the charge and denounced the statement as a lie. When the mother of the injured girl testified that the girl charged the defendant with the crime, she also stated that the defendant promptly denounced the charge as false. This alleged statement was admitted as evidence over the strenuous objection of the defendant.

The admission of this evidence was manifest error. *Brown* v. *State,* 78 Miss. 637, 29 So. 519, 84 Am. St. Rep. 641. The learned attorney general concedes the error, but insists that it was harmless error. It may be said, in response to this suggestion of the representatives of the state, that it is sometimes exceedingly difficult to say, with confidence, just what may influence the verdict of a jury; but we think the error here was not harmless, and, besides, the error thus committed does not stand alone with an otherwise spotless record to cure the error.

We find a spcial bill of exceptions signed by the trial judge, and here quote it:

"Be it remembered that on the 21st day of August 1919, the same being a regular court day of the circuit court of Jackson county, Miss., there came on for hearing the above-styled cause, and all the evidence having been introduced, and the defendant's counsel having concluded their address to the jury in behalf of defendant, and the district attorney in his closing address and the last address to the jury used the following language, to wit: "This fiend and brute (pointing to defendant at the bar of the court) is guilty of raping this little girl. Ah! It is nothing now days and not uncommon to pick up a paper and see where some brute has committed this crime.' (Objected to by defendant's counsel. The court remained silent.) District attorney, after said objection, continuing, said, 'You see it South, North, and East, where a brute of his race has committed this fiendish crime. Are you going to turn him loose on the public?' Again objected to by defendant's counsel, and the court remarked that he could not interfere with the district attorney, and overruled defendant's objection. Then the district attorney replied, "It must hurt, or counsel would not be hollowing,' to which defendant's counsel then and there excepted and present this his bill of exceptions embodying such language, and prays that same be signed

and made a part of the record which is this day, in term time, accordingly done.''

Manifestly, the district attorney went out of the record, and in doing so he appealed to racial prejudice and Southern sentiment upon the crime laid at appellant's door.    This was. wrong and may. have been a strong factor with the jury.

*Reversed and remanded.*

## SPRIGHT $v$. STATE.

### [83 South. 84, In Banc, No. 20853.]

1. WITNESSES.  *Permitting witness to testify after informing him as to his rights.*

   Where a witness in a prosecution for homicide was instructed by the court as to his right to refuse to testify on the ground that it might incriminate himself, first hesitated but finally said he would testify, it was not error for the court in such case to permit his testimony to be taken.

2. WITNESSES.  *Refusal to testify because of self incrimination available only to witness.*

   A defendant convicted of murder cannot complain that a witness testified unwillingly and incriminated himself since the right to refuse to testify was a personal privilege of the witness himself and such right to refuse to testify is given solely to protect the witness from incriminating himself..

3. HOMICIDE.  *Conspiracy.  Evidence to establish.*

   4. HOMICIDE.  *Instruction on conspiracy sustained by evidence.*

   In a prosecution for murder an instruction upon conspiracy was proper .where the record contains abundant proof to justify