## Bowlin v. Commonwealth.

(Decided June 23, 1922.)

### Appeal from Whitley Circuit Court

1. Criminal Law—Conspiracy—Evidence—Overruled Cases.—It is competent in a criminal prosecution to prove as a substantive fact an incriminatory statement made by a co-defendant or co-conspirator in the presence of the defendant and which he did not deny or reply to; provided the statement was made under such circumstances as to call for a response by him and he had an opportunity to do so, since his failure to do so creates an implied ratification of the statement which the jury may consider for what it is worth. The case of Hayden v. Commonwealth, 140 Ky. 634, in so far as it holds to the contrary without the qualifying facts found in the case of Merriweather v. Commonwealth, 118 Ky. 870, is overruled.

2. Criminal Law—Instructions.—It is the duty of the court in criminal prosecutions to instruct the jury upon every phase of the case for which there is any possible basis in the evidence, including the right of self-defense in crimes wherein it is involved; and where the testimony is entirely circumstantial and there is no eye-witness to the facts of the commission of the crime, the self-defense instruction should be given, and this is especially so if the condition of the location indicates a struggle or encounter. But this rule does not apply where the victim of the crime was not killed and testified that he recognized defendant by his voice but could not identify him by sight because of darkness, and neither defendant nor the prosecuting witnesses testified to any fact affecting the right of self-defense.

3. Criminal Law—Eye-witnesses.—By the term "eye-witness" in the above rule is meant one who was present at the place and time of the commission of the offense and became possessed of the knowledge of the facts to which he testified through one of the five senses; hence a witness who identified the defendant as the criminal by his voice, with which the witness was familiar, and who could not recognize the defendant because it was dark, may, nevertheless, be considered as an eye-witness.

J. B. SNYDER, SNYDER & ADKINS and STEPHENS & STEELY for appellant.

CHAS. I. DAWSON, Attorney General, and THOS. B. McGREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On his trial in the Whitley circuit court under an indictment charging him and Owen Carr (sometimes referred to in the record as Kerr) with the crime of malici-

ous shooting and wounding another without killing him, the appellant, Henry Bowlin, was convicted and his punishment fixed at three years' confinement in the penitentiary. His motion for a new trial was overruled and from the judgment pronounced on the verdict he has appealed.

The errors relied upon for a reversal of the judgment by appellant's counsel in their brief are: (1), the admission of incompetent evidence offered by the Commonwealth over appellant's objections, and (2), that the court misinstructed the jury and failed to instruct it upon the whole law of the case. We will determine these grounds in the order named, but it will be necessary to a proper understanding of them to make a brief statement of the facts, which the testimony as a whole tended to establish.

The prosecuting witness, who is alleged in the indictment to be the victim of the crime, was Milford Bray who lived with his wife on the top of Pine Mountain in Whitley county near the line between it and Bell county. Between a quarter and a half mile beyond the residence of Bray lived appellant with his wife and one infant child, and about 75 or 100 yards from his residence the defendant, Carr or Kerr, resided on his place as his tenant, and whom we will hereafter refer to as "Carr." Between two and three miles beyond the residence of appellant and down the mountain appellant's father-in-law, Bob Jones, and his family resided just in the edge of Bell county. Some time during the day of June 22, 1921, Bray shot and wounded a dog belonging to appellant which he testified was worrying his sheep. Bray and his wife, who were introduced by the Commonwealth, testified in substance that between 8 and 8:30 on that night they were aroused from their sleep, having theretofore retired, by a call at or near the gate of, "Hello Milford;" that Bray got up and went to the door and the one who had called him invited him "to come out and let us have a talk a while," when he answered that he was in his night clothes and for the person to come in, to which answer was made, "You killed my dog, did you?" to which Bray answered, "I don't know but I tried to. He was on my sheep." Whereupon the person at the gate said: "G— d— you, I will kill you," and immediately fired a shot gun, the load from which struck Bray and filled his body with small shot practically from

his hips up, none of the wounds being serious. Bray testified that when struck he fell and did not notice or observe what else occurred, but his wife testified that two pistol shots were fired shortly thereafter and two bullet holes were found in the door-facing close to where Bray was standing. Both witnesses testified that they were familiar with appellant's voice and that he was the one who called, and Bray said that when he went to the door he saw the bulk of two men.

Garret Teague, a witness introduced by the Commonwealth, testified that he went with appellant to the latter's house on the afternoon of the day in question, arriving there between 2 and 3 o'clock, and that Owen Carr was there when they first arrived; that some time thereafter Carr went away and at about sundown returned and informed appellant that Milford Bray had shot his dog and had sent him word that if he "didn't like it to come down and he would give him the same kind of a dose;" that immediately Carr took a shot gun from a rack over appellant's door and the latter took a pistol, belonging to witness, and started toward the residence of Bray when witness, without effect, admonished them not to do so. Witness heard some shots in the direction of Bray's house but did not remember the number, and in a short while defendants returned, and witness with appellant and his family left and went to the residence of Bob Jones in Bell county where they spent the night and a part of the next day.

Appellant and his co-defendant, Carr, in their testimony, admitted that they were with the witness, Teague, at appellant's house on that afternoon, but they denied that either of them singly or both of them together went to the home of Bray at any time that day or that they were in front of his house or called him out or shot at him and that they knew nothing of the shooting of appellant's dog until the next day. They corroborated Teague, however, upon the fact that he went with appellant and his family to the home of the father-in-law in Bell county where they spent that night and some of the next day. The father-in-law and one or two members of his family, a brother of appellant and one or two other witnesses attempted to fortify the alibi by testifying that appellant was at the faher-in-law's home somewhere between 6 and 7 o'clock that night when it was yet daylight and that he remained there throughout the night. No one looked at

a timepiece except one witness to whom Teague telephoned and requested witness to come to the home of Jones and play the fiddle, which witness testified he did. That witness claims to have looked at his watch and it was then about 7 o'clock, but he is the only one who attempts to speak with accuracy. There are other circumstances in the case pointing more or less to the guilt of appellant, one of which was that after the indictment he was quite active in trying to convict the prosecuting witness, Bray, with some violation of the prohibition law with evidence strongly bearing the earmarks of having been "salted" and that he participated in the "salting;" but we do not deem it necessary for the determining of the questions presented on the appeal to further rehearse the testimony, since it will at once appear that it was abundantly sufficient to sustain the verdict of the jury and there is nothing in the record supporting the argument of counsel that the prosecution is malicious and without foundation.

Taking up now the grounds urged for a reversal, and directing our attention first to ground (1) we find that the only action of the court necessary to be considered thereunder was the admission of certain testimony by the witness, Teague, given by him in rebuttal, contradicting the witness Carr after the proper foundation had been laid for its introduction. Carr, when on the stand, was asked by attorney for the Commonwealth if he did not state in the presence of appellant and Garret Teague, after the first two had returned from the home of Bray on that night, that "he (Carr) heard Milford Bray fall after they shot." Carr denied making such statement and Teague was introduced in rebuttal and testified to it over appellant's objections, but the court did not tell the jury the purpose for which it was admitted, and it is this alleged improper evidence of which complaint is made under this ground. If we were to view this evidence as admissible only for impeaching purposes it is doubtful if it, though admitted without any admonishment by the court, was sufficiently prejudicial to authorize a reversal of the judgment. That under the circumstances the correct practice would have been for the court to have told the jury the purpose for which it was admitted is held in the case of McDaniel v. Commonwealth, 185 Ky. 608, and many cases referred to and reviewed therein. But it is not every technical error, whether it

consists in the admission or rejection of testimony, or in any other matter pertaining to the trial, that will authorize a reversal, since, under the provisions of section 353 of the Criminal Code, we are not authorized to reverse a judgment in a criminal case for any error unless defendant's "substantial rights have been prejudiced" thereby. But, waiving this point, we think the complained of evidence was admissible as substantive testimony and the Commonwealth offered to introduce it as such, but the court sustained an objection thereto.

In 16 Corpus Juris, 658, the rule governing the introduction of statements and declarations made by a co-conspirator or a co-defendant after the commission of the crime and in the presence of the defendant on trial is thus stated: "Statements or declarations by one conspirator or co-defendant, although made after the termination of the conspiracy, are competent against another conspirator or co-defendant where they were uttered in his presence and he assented thereto; or where, in some other way, he acted in an incriminatory manner in connection with the statement. The necessary assent may be evidenced by a direct admission of the truth of the statement; by a failure to deny its truth where the circumstances are such as to make it reasonable to suppose that, if the statement were untrue, he would have denied it." Among the numerous cases cited in the note supporting the text from almost all of the states in the Union is that of Lyon v. Commonwealth, 29 Ky. L. R. 1020, in which this court in its opinion said: "No statements of the other parties to the crime were admitted except those made in his presence, at a time and under such circumstances as would naturally call for a response from him." This rule of criminal practice, we think, is of practically universal application, and is almost daily followed by trial courts of this Commonwealth. The testimony is in the nature of an admission by silence or acquiescence against the interest of the one on trial and is to be considered by the jury for whatever it is worth. It is not to be introduced unless coming clearly within the rule permitting it; i. e., that the defendant on trial was present and must have heard it, and that it was made *under such circumstances* as that he was called upon to or could deny it if untrue, and that he had an opportunity to do so.

The question is elaborately discussed and the grounds upon, as well as the caution with which, such statements

are admissible, are stated in the case of Merriweather v. Commonwealth, 118 Ky. 870. The proven statements were held to be inadmissible in that case, not because they are universally incompetent, but because under the circumstances under which they were made in that case it was held that the defendant on trial, and against whom they were offered, was not called upon to speak anything with reference thereto or to deny them because, as said in the opinion, "The accused in this instance was in custody, manacled, and being hurried to jail, charged with a heinous crime, justly arousing the indignation of the community. Surrounding him was a crowd of curious people, whose motives for being present may have been interpreted—not unreasonably, by one so situated as the prisoner was—as inimical to his personal safety. Without an opportunity to consult counsel, beset by fears and misgivings, possibly stricken by a consciousness of guilt, and ignorant of a proper course to pursue, was not the natural thing for him to do to keep silent?"

In the case of Hayden v. Commonwealth, 140 Ky. 634, the accused was convicted of the crime of grand larceny for which offense he and another were jointly indicted. At his trial he was asked if he did not hear his co-defendant state in the presence of the officers that she threw the stolen goods out of a window and that he (appellant in that case) was there to grab them for her and that he did not deny that statement when she made it to the officer. He denied hearing any such statement made by his co-defendant, and the officer was afterwards called by the Commonwealth in rebuttal and testified that the co-defendant did make that statement in the presence of appellant and that he then and there denied it. The opinion of this court in reversing the judgment for that alleged error treated the question as if the testimony was introduced wholly for contradictory purposes and never referred to or discussed the question whether it was admissible as substantive testimony. The opinion seems to have been bottomed upon the Merriweather case, *supra*, but in doing so we think the court misinterpreted that opinion, since, as we have seen, the facts of the two cases were entirely different. In the Merriweather case the defendant on trial was manacled and in custody at the time of the making of the alleged statement and it was held that he was in no condition to freely act and that under such circumstances his silence could not be interpreted as an

admission; while in the Hayden case no such facts appeared. We, therefore, conclude that in the latter case the court went further in its opinion than was authorized by the Merriweather case, or any other one to which our attention has been called, and to that extent it is unsound and should not be followed. Moreover, since the rendition of that opinion this court in the case of Wilson v. Commonwealth, 166 Ky. 301, refused to reverse the judgment for an alleged error, almost similar in all respects to the one now under consideration, except that in that case the one making the proven statement was charged in the indictment as a conspirator with the defendant on trial. Since, however, the statement was made after the accomplishment of the object of the conspiracy we do not see how that fact could affect the competency of the evidence for, as we have seen from the excerpt from Corpus Juris, *supra*, the statements of a co-conspirator under such circumstances is on a par with those made by a co-defendant when no conspiracy is charged. In the Wilson opinion it is pointed out that the reasons for rejecting the statements in the Merriweather case were that ''they (defendants in the indictment) were manacled and being hurried to jail; there was great indignation in the community over the crime; surrounding the accused was a large and excited crowd, and none of the defendants had had an opportunity to consult their counsel or to receive any advice from their friends. Under these circumstances some of the accused made statements involving the guilt of Merriweather, and he never denied, confessed or assented to such statements, but remained silent, and the court held that under those circumstances he was not bound to speak and that the evidence was not competent as against him on his separate trial.'' The Hayden opinion is also referred to in the Wilson case but the distinction between it and the Merriweather case is not pointed out. We, therefore, conclude that the complained of testimony in this case was, under the circumstances, admissible as substantive testimony, and, if so, appellant can not complain of it when introduced for the purposes of contradicting the witness Carr even without the necessary admonishment.

Under ground (2) it is urged that the court erred in not giving to the jury the self-defense instruction, and in support thereof the cases of Rutherford v. Commonwealth, 13 Bush 608; Ratchford v. Commonwealth, 16 Ky.

L. R. 411; Messer v. Commonwealth, 28 Ky. L. R. 920; Bast v. Commonwealth, 124 Ky. 747; Frazure v. Commonwealth, 169 Ky. 620, and Ratliff v. Commonwealth, 182 Ky. 256, are cited and relied on. The doctrine of those cases is that where there was no eye-witness to the commission of the crime and the evidence was purely circumstantial it is the duty of the trial court to give to the jury all of the law that might be applicable to any possible state of case, including an instruction on self-defense; and, especially so, if the surrounding conditions where the crime was committed indicated a struggle or some character of encounter. But, an examination of those cases will show that the rule of practice upheld by them is not to be applied except under the circumstances therein outlined; i. e., where there were no eye-witnesses to the commission of the crime and the testimony was purely circumstantial, and where, of course, the crime may have been committed under such circumstances as to reduce it below the degree of the one for which defendant was indicted, or in the exercise of his right of self-defense. We have no such case here; the evidence is not circumstantial and the witnesses for the Commonwealth, who testified as to how it occurred, were eye-witnesses. True, Bray did not recognize with his sense of sight either of the defendants in the indictment, but both he and his wife recognized appellant by his voice, and the law has always regarded the sense of hearing as reliable as that of any other of the five senses. The record in the Frasure case presented facts calling for the application of the doctrine of the cases referred to much stronger than those found in this record, but the court declined to reverse the judgment for the same error now relied on. The difference betwen the conditions calling for an application of that doctrine, as set forth in the cases, and the condition of this record is so broad and wide that even a layman can not fail to observe it, and the court did not err in failing to give to the jury the self-defense instruction or any others in addition to those given.

Perceiving no error prejudicial to the substantial rights of appellant, the judgment of conviction is affirmed.