# Griffith v. Commonwealth.

(Decided Oct. 3, 1933.)

WAUGH & HOWERTON for appellant.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

The appellant, Harry Griffith, was indicted with his brother, Frank Griffith, and Milton Hally, charged with the murder of John Harshbarger, and upon a separate trial was convicted and sentenced to life imprisonment. His defense was an alibi, quite reasonable and well supported.

Harshbarger was shot in the abdomen on the street in the village of Worthington about 8:15 o'clock on the night of December 30, 1932. He was immediately carried to Sammons' home across the street. He there said he did not know who it was, or why it was done; that he had been shot by a tall man wearing a cap; that there were three men in the group who met him, and when one of them said he had gone far enough he thought he was joking. It appears that Harshbarger knew the appellant well, but he did not at the time indicate that it was he who had shot him or that he was in the group. The implication is that the parties intended to rob him, although he did not say so. Without this, motive is lacking. Immediately following the sound of the shot, three men were seen running from where it had been fired. Witnesses recognized the appellant, Harry Griffith, about five hundred feet away as one of these men. Others recognized his brother, Frank; while others who knew them did not identify either. It is not clear whether all these witnesses were referring to the same man or had seen different men. The one identified as Harry Griffith was running perhaps two hundred yards away from the place where Harshbarger had been shot. In a few minutes appellant's brother, Frank, was seen in a different part of the village, and appeared to be scared and excited. Not long after the wounded man had been taken to Sammons' home, both the appellant and his brother joined and mingled with the crowd which gathered. The defendant for a time was standing in the door near the wounded man. They were both soon arrested charged with the shooting.

That night Harshbarger was taken to a hospital at Ashland and the bullet removed. About 2 o'clock that morning the appellant and his brother were taken by the officers before Harshbarger at the hospital. He was asked if he knew them, and, pointing at the appellant, said, "That is the fellow that pulled the trigger." When asked if he knew the other boy, he said

508

he did not know him or did not see him there, and that it was a tall and slender fellow with a cap who shot him. The accused replied, "Dad, I wasn't the one that done it," or as another witness testified, "You have got me wrong, Dad," and Harshbarger responded, in substance, that he did not know what he wanted to do that for as he was a hard-working man and tried to treat everybody right. An hour or so later the defendant and his brother were again taken before the wounded man. A notary public was present and had either prepared or was at the moment writing a statement for his execution. He again pointed to the defendant as being the one who had shot him. A witness testified one of the officers asked him "to swear to the boy" and he said that he could not do that. The officer says he never asked him to swear to anything, but that Harshbarger said, "I don't want to swear it was them; I don't want to talk about it," and laid back down. There is an immaterial variance among the several witnesses as to the exact language used on the occasions, but the above is the essence of what was said.

It is obvious that the statements are not within the res gestae rule. There was not a breath of evidence tending to show that the declarations of the wounded man were made under a sense of approaching death so as to bring them within the dying declaration rule. He did not die until twelve or fourteen hours later. The Attorney General refers us to a statement by a nurse reciting a statement which the deceased made to his wife at the hospital concerning some small financial matters from which it might be implied he was getting his wordly affairs in order. That affidavit was filed in the record by the Commonwealth without notice to the defendant and after his motion for a new trial had been overruled. The sufficiency of the subject-matter aside, it is plain that it cannot be considered. A party cannot supplement evidence to sustain the claim of a dying declaration after the trial. Therefore, the admissibility of evidence of the statements must be considered under some other rule.

When accusatory or incriminating statements are made in the presence and hearing and with the understanding of the accused person and concerning a matter within his knowledge, under such circumstances as

would seem to call for his denial and none is made, those statements, and the fact that they were not contradicted, denied, or objected to, become competent evidence against the defendant. They derive their competency from the theory and upon the broad principle that the statements were impliedly ratified and adopted by the accused as his own and constituted a tacit admission on his part though an inaudible one. Silence is inferred assent. If innocent, a reaction and declaration may rationally be expected of him rather than a tame submission. Related to this specific rule is that which admits evidence of the circumstances when the accused makes a reply which of itself is to be regarded as an admission, or when his demeanor, actions, or reactions, apart from any verbal expression, may be construed as an implied acquiescence in the truth of the incriminating statements. His voluntary conduct exhibiting some act of the mind may be regarded as of circumstantial significance and as a display of the consciousness of guilt. Admissibility of this character of evidence as not being tainted by the hearsay stigma is based upon the crystalization of the experience of men that it is contrary to their nature and habits to permit statements to be made in their hearing and presence tending to connect them with an offense for which they may be made to suffer punishment without entering an objection or denial unless they are in some manner repressed or restrained or there is seemingly no natural and proper call for such contradictions. The occurrence is a fact for the jury to interpret as throwing light upon the question of guilt or innocence. Its probative force may be great or little according to the particular circumstances and the general mental and moral fiber of the person charged. Such is the rationale and the rule in this state. In some jurisdictions there are qualifications, as where the accused is at the time under arrest; and Wigmore (section 293) criticizes the rule in respect to the conduct of the accused and argues his whole conduct should come in, whether it tells for consciousness of guilt or consciousness of innocence. Merriweather v. Commonwealth, 118 Ky. 870, 82 S. W. 592, 594, 26 Ky. Law Rep. 793, 4 Ann. Cas. 1039; Sprouse v. Commonwealth, 132 Ky. 269, 116 S. W. 344; Bowlin v. Commonwealth, 195 Ky. 600, 242 S. W. 604; Davis v. Commonwealth, 204 Ky. 809, 265 S. W. 316; Hord v. Commonwealth, 227 Ky. 439, 13 S. W. (2d)

244; Pierson v. Commonwealth, 229 Ky. 584, 17 S. W. (2d) 697; Barton v. Commonwealth, 240 Ky. 786, 43 S. W. (2d) 55; State v. Burno, Portee and Tucker, 200 N. C. 142, 156 S. E. 783, 80 A. L. R. 1229.

But that rule is inapplicable here. In the instant presentation, the accused did not remain silent. When first brought before the wounded man and identified, he declared that he was not the guilty man. When brought before him the second time, the circumstances did not seem to require another contradiction of the accusation, for the prisoner had already asserted the identification was wrong and Harshbarger stated that he would not swear to the identity. Can the evidence be regarded as competent under such circumstances? We think not. It violates the first principle in the law of evidence to permit a defendant's rights to be affected by declarations of one made without the sanction of an oath or of the presence of death or as a spontaneous utterance connected with the occurrence. It must not be lost sight of that it is not the accusation but the tacit admission of the accused that is evidence in such cases, and that the only reason for admitting the accusation is to explain his conduct. The statement of the accuser might be a self-serving declaration, as it was held to be in State v. Evans, 98 Or. 214, 192 P. 1062, 193 P. 927. Except perhaps in a certain class of circumstances in rape cases, extrajudicial identification of persons accused of crime is never competent as original evidence in a subsequent trial. Note 41 L. R. A. (N. S.) 949. A witness cannot add weight to his testimony by telling a thing on a different occasion. Edwards v. Commonwealth, 145 Ky. 560, 140 S. W. 1046. The fact that death intervened and prevented his testifying can make no difference. It would be a most dangerous thing to admit both the statement and the denial. The jury might elect to accept the statement of the accuser and reject or discredit the statement of the accused, with the result that there will be a conviction upon what a witness said somebody else not under oath said about the matter.

In the course of the opinion in Merriweather v. Commonwealth, supra, applying and interpreting the rule of admission by silence, it is said:

"It needs no elaboration to show that at the common law such evidence is generally not receivable.

What another may have said, though in the presence of the accused (not forming a part of the res gestae), is immaterial, except it be a fact that the accused, by admitting the statement to be true, made it his statement by adoption. It is at war with every principle of the law of evidence as administered in this country and England to admit it on any other ground. When, therefore, it appears that the accused did not adopt the statement as his own, from whatever cause, it ought not to be admitted at all. It is not material in the analysis of this rule that the statement may in fact be true, or that it cannot be otherwise proven. The sole inquiry is, did the person attempted to be bound actually admit it, voluntarily and understanding? Is it evinced that by an action of his mind he, in effect, likewise declared the fact to be as stated? If not, then the matter is incompetent for any purpose as evidence against him."

This sort of evidence, where there was a denial by the person accused, is generally rejected. Wigmore on Evidence, Sec. 1072; People v. Wilson, 61 Cal. App. 611, 215 P. 565; People v. Lapara, 181 Cal. 66, 183 P. 545; People v. Pfanschmidt, 262 Ill. 411, 104 N. E. 804, Ann. Cas. 1915A, 1171; People v. Cardinelli, 297 Ill. 116, 130 N. E. 355; People v. Harrison, 261 Ill. 517, 104 N. E. 259; People v. Schallman, 273 Ill. 564, 133 N. E. 113; State v. Evans, 98 Or. 214, 192 P. 1062, 193 P. 927; Brown v. State, 78 Miss. 637, 29 So. 519, 84 Am. St. Rep. 641; Garner v. State, 120 Miss. 744, 83 So. 83; Moore v. State, 151 Ark. 515, 236 S. W. 846; Rogers v. State, 88 Ark. 451, 115 S. W. 156, 41 L. R. A. (N. S.) 857; Low v. State, 108 Tenn. 127, 65 S. W. 401; State v. McIntosh, 94 S. C. 439, 78 S. E. 327; Mumford v. State, 70 Fla. 424, 70 So. 399.

The facts in State v. Fisher, 54 Mont. 211, 169 P. 282, are strikingly like those before us. A man had been held up on the street and shot. A tall and a low man were seen running from the place. Men of that description were arrested and taken before the wounded man at the hospital twice, and he identified one of them as having shot him, but was not sure as to the other one. The response of the accused was not an unequivocal denial, but only an admonition that the accuser should be very sure that he was the man. The court

held the statements admissible, but it was under the influence of a statute providing that evidence may be given of an act or declaration of another in the presence of or within the observation of a party and his conduct with relation thereto.

The appellant claims that he was entitled to the evidence of some railroad employees which he offered and the court rejected. It was that within a half hour after Harshbarger was shot three strange men, one of whom answered the description given by the deceased of his assailant, climbed through a freight train in the yards, coming from the side toward the place of the shooting, although some distance away, and made inquiry as to the distance to the east end of the railroad yards. When told there was a railroad police officer up that way, one of them asked what he looked like. Although of doubtful competency, under the circumstances of this case we are of opinion that this evidence should have gone to the jury for what it was worth. Sidney Greer v. Commonwealth, 10 Ky. Op. 664, 1 Ky. Law Rep. 120; White v. Commonwealth, 80 Ky. 481; 16 C. J. 559; Bishop's New Criminal Procedure, Sec. 1070.

An instruction was given the jury providing that the defendant might be convicted of aiding and abetting Frank Griffith and Milton Hally, indicted with him, if they should find that either had killed Harshbarger. There was no evidence connecting Hally with the crime, except perhaps his association with the other two men beforehand. Frank Griffith was connected with it only by additional evidence of his flight from the direction of the scene and his possession of a pistol that afternoon. It does not seem to us that this was sufficient evidence to authorize the instruction, although it could hardly be regarded as prejudicial to the appellant's rights. If the evidence is substantially the same upon another trial, this instruction should be omitted.

As disclosed by the record, this was a cowardly, cruel murder, without motive or excuse. The defendant's guilt, however, is not very satisfactorily established, although we do not express an opinion as to the sufficiency of the evidence to sustain the verdict of guilt. Whether guilty or innocent, he is entitled to the benefit of all the law under which he was tried.

For the error in admitting the evidence concerning the deceased's identification and the accused's denial, the judgment is reversed.