No. 96-700

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

STATE OF MONTANA,

Plaintiff and Respondent,

v.

RALPH PATRICK WIDENHOFER, JR.,

Defendant and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
In and for the County of Lewis and Clark,
The Honorable Jeffrey M. Sherlock, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Steven M. Hudspeth, Attorney at Law, Great Falls, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; Elizabeth L. Griffing,
Assistant Attorney General, Helena, Montana

Mike Menehan, Deputy Lewis and Clark County Attorney, Helena,
Montana

Submitted on Briefs: October 30, 1997

Decided:    December 23, 1997
Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

Ralph Patrick Widenhofer, Jr. (Widenhofer) appeals from the decision of the First Judicial District Court, Lewis and Clark County, denying his motion to suppress evidence of his blood alcohol concentration (BAC) and allowing hearsay evidence indicating who was the driver of a vehicle involved in a one-vehicle rollover accident. Affirmed in part and reversed and remanded in part.

Background

On the evening of October 28, 1995, Widenhofer and a friend, Scott Rothschiller (Rothschiller), ate dinner at Marysville House in Marysville near Helena, Montana. Widenhofer and Rothschiller were lodging at the Grady Ranch while hunting in the Helena area. The record does not reveal whether the individuals consumed drinks with dinner, but after dinner, the bartender, Tami Prout (Prout) served each of them a shot and a beer. They left the bar at closing time, around 11:30 p.m., and proceeded down the narrow, winding, dirt road that leads back to the Lincoln Highway. Upon reaching a rough portion of the road, the vehicle rolled into the ditch. Widenhofer and Rothschiller received injuries as a result of the accident. Shortly thereafter, a car came upon the accident, picked up Widenhofer and Rothschiller and took them to the Silver City Bar, which is the nearest business in the vicinity.

Meanwhile, when Prout finished closing the Marysville House bar around midnight she drove down the Marysville road and noticed a vehicle in the ditch. Prout testified that she quickly investigated the accident from her car and determined that no one was in or near the vehicle, so she proceeded to the Silver City Bar where she planned to meet some friends. When Prout arrived at the Silver City Bar parking lot, she noticed several individuals standing outside, including Widenhofer and Rothschiller whom she recognized from Marysville House. Widenhofer was bleeding from his head near his left eye so they went inside the bar and the off-duty bartender took Widenhofer to the women's restroom to clean the blood off his face and tend to his injuries. Prout then convinced Widenhofer that she should call 911 to assist with Widenhofer's vehicle.

Highway Patrol Officer Scott Zarske (Officer Zarske) received a dispatch call around midnight on October 29, 1995, indicating that an accident had occurred on the road to Marysville and that the occupants of the vehicle were at the Silver City Bar. Officer Zarske proceeded to the Silver City Bar to interview the individuals involved in the accident.

Rothschiller was the first to exit the bar and approach Officer Zarske's patrol car.

He sat in the front seat of the patrol car and answered some questions about the accident. Officer Zarske testified that Rothschiller indicated that Widenhofer was driving the vehicle when it went off the road and that Rothschiller was a passenger. When Officer Zarske saw Widenhofer approaching the patrol car with Prout assisting him, he asked Rothschiller to move to the backseat and allow Widenhofer to sit in the front passenger seat. Officer Zarske said he requested that Rothschiller move to the backseat so that he could more easily interview Widenhofer about the cause of the accident in light of his understanding that Widenhofer was the driver.

Officer Zarske also asked Prout a few questions. Prout indicated that she believed Widenhofer's condition had deteriorated since she had arrived at the Silver City Bar and that she thought it was due to loss of blood. Prout emphasized that she thought Widenhofer was in need of medical care.

Widenhofer sat in the front passenger seat of the patrol car. Officer Zarske testified that he smelled a strong odor of alcohol. The officer asked Widenhofer some questions about the accident and suggested that an ambulance take Widenhofer and Rothschiller to the hospital to be treated for their injuries. They refused, but expressed a desire to contact the Grady Ranch instead. Officer Zarske then offered to transport them to the hospital in his patrol car. They agreed. However, before they left the Silver City Bar parking lot, Officer Zarske performed a horizontal gaze nystagmus (HGN) test on Widenhofer. Widenhofer scored six out of six on the test which, in the absence of other factors such as a head trauma injury, indicates that an individual is under the influence of alcohol.

They then proceeded to St. Peter's Hospital in Helena. Widenhofer was admitted to the emergency room and received treatment for his injuries. During the time that Widenhofer was being treated, Officer Zarske contacted the Grady Ranch and arranged for Ed Grady to pick up Widenhofer and Rothschiller at the hospital. When medical personnel finished treating Widenhofer, Officer Zarske went to Widenhofer's room to continue his investigation of the accident. He asked several questions, including information about Widenhofer's driver's license and insurance. Officer Zarske also expressed his opinion that the accident was alcohol-related and he requested that Widenhofer submit to a blood test. Officer Zarske read the Implied Consent Form to Widenhofer:

You are under arrest for driving (or being in actual physical control of) a motor vehicle while under the influence of alcohol (and/or drugs). Under Montana law, if you are arrested for driving under the influence, you are considered to have given your implied consent to a test for alcohol and possibly a test for drugs. As arresting officer, I have the right to select the type of test you will be

asked to take. . . . If you refuse this testing, your driver's license will be seized and suspended for six months. . . .

After Officer Zarske read the form, Widenhofer asked some questions concerning the possibility of losing his license.  Officer Zarske then read the form again: "You are under arrest . . . ."  Widenhofer then consented to a blood test rather than lose his driving privileges.  Officer Zarske directed hospital staff to take the sample while he observed the process.

Widenhofer claims that during the reading of the implied consent form, Officer Zarske never stood closer than two feet to the bed.  Officer Zarske did not touch Widenhofer or physically restrain him in any way.  Officer Zarske did not write a Notice to Appear while at the hospital.  Instead, Officer Zarske informed Widenhofer that he would send the blood sample to the crime lab and he would contact Widenhofer by mail if the results indicated that he was under the influence.  Officer Zarske left the hospital shortly after Ed Grady arrived but before Widenhofer was released from the emergency room.

Officer Zarske sent the blood sample to the Missoula Crime Lab.  The results of the blood test indicated that Widenhofer had a .27 BAC.  Accordingly, Officer Zarske wrote a Notice to Appear and Complaint for driving under the influence (DUI) and mailed it to Widenhofer at his home address in Great Falls, Montana.  Widenhofer received the notice to appear several days after the accident.

Prior to trial, Widenhofer filed a combined motion to suppress the results of the blood test and motion in limine asserting that he was not under arrest during the blood testing, therefore, the results and related testimony were not admissible.  The District Court denied the motion based on its finding that Widenhofer was under arrest at the hospital.  Before and at trial, Widenhofer attempted to defend against the DUI charge by declaring that he was not driving the evening of October 28th.  The State of Montana (State) subpoenaed Rothschiller in Great Falls on the night of July 28, 1996.  A jury trial was held in Helena on July 29, 1996; Rothschiller failed to appear.  As a result, the State tried its case without testimony from Rothschiller.  The jury found Widenhofer guilty of driving under the influence of alcohol on the night of the accident.  Widenhofer appeals from the District Court's denial of his motion to suppress and from the jury verdict.  We address two issues on appeal:

1) Did the District Court err in denying Widenhofer's motion to suppress the results of his blood test?

2) Did the District Court err in allowing Officer Zarske to testify concerning hearsay statements allegedly made to him by Rothschiller?

## Discussion

### I

1) Did the District Court err in denying Widenhofer's motion to suppress the results of his blood test?

The standard of review of a district court's denial of a motion to suppress is whether the court's findings of fact were clearly erroneous, and whether those findings were correctly applied as a matter of law. State v. Williams (1995), 273 Mont. 459, 462, 904 P.2d 1019, 1021; State v. Flack (1993), 260 Mont. 181, 188, 860 P.2d 89, 92, 94. Widenhofer contends that he was not under arrest at the time the blood sample was drawn at St. Peter's Hospital. As a result, he asserts that the blood sample and the resulting BAC evidence should have been suppressed. Widenhofer asserts that the District Court erred in finding that he was under arrest at the hospital and, thus, in denying the combined motion to suppress and motion in limine.

Montana law requires that an individual be arrested for DUI before an officer can request a blood alcohol test under the implied consent law. See õ 61-8-402, MCA (1995) ("A person who operates . . . a vehicle upon ways of this state open to the public is considered to have given consent . . . to a test . . . of the person's blood . . . for the purpose of determining any measured amount or detected presence of alcohol or drugs in the person's body if arrested by a peace officer for driving . . . a vehicle while under the influence of alcohol . . . ." (emphasis added)). Montana law also provides that "[a]n arrest is made by an actual restraint of the person to be arrested or by the person's submission to the custody of the person making the arrest. . . . All necessary and reasonable force may be used in making an arrest, but the person arrested may not be subject to any greater restraint than is necessary to hold or detain that person." Section 46-6-104, MCA (1995). In State v. Thornton (1985), 218 Mont. 317, 322-23, 708 P.2d 273, 277, this Court adopted a three-part test for determining whether an individual is under arrest: "An arrest involves three elements: (1) authority to arrest; (2) assertion of that authority with intention to affect an arrest; and (3) restraint of the person arrested."

Widenhofer, arguing that the State failed to satisfy elements two and three, focuses on the fact that he was never physically restrained by Officer Zarske. However, physical restraint is not necessary for an arrest under Montana law.

In Thornton, we adopted a broad interpretation of the term "restraint," which includes restraint by oral statement of arrest without any physical touching. We explained that

the view that a physical restraint is a necessary element of an arrest is largely discredited in recent cases. . . . [W]e assert that the standard for an arrest when there is not a physical restraint of the defendant is whether a reasonable person, innocent of any crime, would have felt free to walk

away under the circumstances.  This standard drops any technical requirements for an arrest and the concept of restraint, and instead looks upon all the facts and circumstances of each case.

Thornton, 708 P.2d at 277-78 (citations omitted).

Widenhofer asserts that the issue of whether he was under arrest under the particular facts of this case (no physical restraint or citation issued while defendant was in the hospital) is an issue of first impression for this Court.  As a result, Widenhofer asserts that the Court should follow other jurisdictions that have addressed similar issues.

We conclude, however, that each of the cases that Widenhofer presents is distinguishable. See Seith v. State (Ga. App. 1997), 484 S.E.2d 690 (concluding that defendant was not under arrest prior to blood testing but that testing was done because defendant was involved in a serious accident therefore authorizing statute did not require that defendant be under arrest at time of testing); State v. Hansen (N.D. 1989), 444 N.W.2d 330 (officer does not contend that defendant was under arrest at time of blood sampling and defendant did not consent to blood test); State v. Waicelunas (Ariz. Ct. App. 1983), 672 P.2d 968 (officer testified that he did not place defendant under arrest and extracted blood sample despite defendant's refusal); State v. Williams (Kan. Ct. App. 1980), 610 P.2d 111 (officer admitted that he did not verbally arrest defendant and court found that defendant did not voluntarily consent to blood testing); State v. Baker (Neb. 1969), 171 N.W.2d 798 (dispute existed whether defendant consented to blood testing, no dispute that defendant was not arrested until two days after blood was withdrawn); State v. Gorey (Ohio Mun. 1994), 646 N.E.2d 1208 (statute specifically requires that defendant be "actually seized;" Ohio does not recognize "constructive seizure" of the defendant).

Widenhofer further asserts that "it is clear that a reasonable person in Widenhofer's situation would have felt free to walk away from both Zarske and the Hospital . . . ."  We disagree.  The facts and circumstances of this case support a conclusion that Widenhofer was under arrest when he submitted to a blood test at the request of Officer Zarske.  Officer Zarske delivered Widenhofer to St. Peter's Hospital, he remained at the hospital and maintained contact with Widenhofer during and after Widenhofer's medical treatment.  Officer Zarske did not leave Widenhofer until he was satisfied that Widenhofer was safely in the custody of Ed Grady.  Officer Zarske further testified that he considered Widenhofer's safety and medical needs more important than taking him to jail.  Officer Zarske verbally placed Widenhofer under arrest at the hospital.  Finally, Officer Zarske asserts that verbal restraint was sufficient to arrest Widenhofer in this case because Widenhofer was being treated for his injuries and Widenhofer was calm and cooperative. Based on the foregoing facts, we conclude that Officer Zarske complied with õ 46-6-104, MCA, by using no greater restraint than is

necessary to hold an individual in this particular situation. We further conclude that Widenhofer was under arrest when Officer Zarske requested the blood test and, therefore, hold that the District Court did not err in denying Widenhofer's motion to suppress the results of the blood test. Affirmed.

II

2) Did the District Court err in allowing Officer Zarske to testify concerning hearsay statements allegedly made to him by Rothschiller?

The standard of review for evidentiary rulings is whether the district court abused its discretion. State v. Gollehon (1993), 262 Mont. 293, 301, 864 P.2d 1257, 1263. The determination of whether evidence is relevant and admissible is left to the sound discretion of the trial judge and will not be overturned absent a showing of abuse of discretion. Gollehon, 864 P.2d at 1263.

Widenhofer asserts that the District Court abused its discretion when it allowed Officer Zarske to testify regarding Rothschiller's statement that Widenhofer was the driver of the vehicle involved in the accident. He contends that Officer Zarske's testimony was hearsay and its admission violated his constitutional right of confrontation and to cross-examine a witness.

The State asserts that Officer Zarske's testimony falls within Rule 801(d)(2)(B), M.R.Evid., as an exception to hearsay. That rule provides: "A statement is not hearsay if . . . [t]he statement is offered against a party and is . . . a statement of which the party has manifested an adoption or belief in its truth . . . ." Rule 801(d)(2)(B), M.R. Evid.

The State asserts that "Widenhofer clearly acquiesced in the statement that he was the driver and thereby manifested an adoption in its truth." In support, the State alleges that by not responding adversely to Rothschiller's pointing at Widenhofer as the driver, and by sitting in the front seat of the patrol car, "Widenhofer acquiesced completely in Rothschiller's statement that Widenhofer was the driver of the vehicle." We disagree.

The State's reliance on Rule 801(d)(2)(B), M.R.Evid., is misguided for two reasons. First, the State concedes that the District Court did not make an express determination that Widenhofer adopted the statement of Rothschiller as is required. See United States v. Schaff (9th Cir. 1991), 948 F.2d 501, 505 (the federal courts allow admission of adoptive statements provided that the district court makes a determination that an innocent defendant normally would have made a response to the statement). Second, the State has not presented sufficient evidence that Widenhofer acquiesced in Rothschiller's statement. Widenhofer sat in the front seat of the patrol car at Officer

Zarske's request.  By simply sitting in the front seat of the patrol car, Widenhofer did not indicate agreement with statements Rothschiller had made to Officer Zarske when Widenhofer was not present.  In addition, when Rothschiller was pointing at Widenhofer, which Officer Zarske claimed was in response to his question of who was driving the car, Widenhofer could not hear the conversation and did not have any reason to know what Officer Zarske and Rothschiller were discussing.  Widenhofer's subsequent failure to contradict Rothschiller's pointing did not amount to an adoption by Widenhofer of Rothschiller's statement.  Therefore, we reject the State's argument that the District Court properly admitted Officer Zarske's hearsay testimony under the Rule 801(d)(2)(B), M.R.Evid., adoption exception to the hearsay rule.

Throughout Officer Zarske's testimony relating to Rothschiller's statements, defense counsel made objections.  After allowing Officer Zarske to testify as to several statements made by Rothschiller, the District Court inquired: "I've let in some statements given by this individual, who is apparently not here.  So why don't you [prosecutor], for the record, indicate your efforts to get him here."  Based on this statement by the court and its subsequent overruling of defense counsel's objections, Widenhofer assumed that the court was proceeding under the "unavailable witness" exception contained in Rule 804(a)(5), M.R.Evid.  Rule 804 controls situations where the declarant of a statement is unavailable and a hearsay statement will be admitted.  Subsection (a) states: "Unavailability as a witness includes situations in which the declarant: . . . (5) is absent from the hearing and the proponent of the declarant's statement has been unable to procure the declarant's attendance by process or other reasonable means."  Rule 804(a)(5), M.R.Evid.

Widenhofer contends that the District Court's allowing the hearsay testimony presented by Officer Zarske at trial violated his right to confront and cross-examine a witness under the Sixth Amendment of the United States Constitution and Article II, Section 24 of the Montana Constitution.  This Court (in the context of protecting sexually abused children while testifying in court with an opaque screen shielding them from the defendant) adopted the United States Supreme Court's reasoning that literal reading of the Confrontation Clause would

"abrogate virtually every hearsay exception, a result long rejected as unintended and too extreme." Thus, in certain circumstances, "competing interests, if  'closely examined,' may warrant dispensing with confrontation at trial."

State v. Davis (1992), 253 Mont. 50, 58, 830 P.2d 1309, 1314 (citations omitted).  The

State has not provided a "competing interest" justifying admission of hearsay testimony as a substitute for Rothschiller's presence at trial. The State's only excuse is that it subpoenaed Rothschiller the night before trial, and he subsequently failed to attend. This Court has not had occasion to determine what standard to apply when determining whether a witness is "unavailable" for purposes of Rule 804(a)(5), M.R.Evid., Widenhofer asserts that this Court should adopt the standard employed by the United States Supreme Court, that the prosecution has the burden under Rule 804 to make a reasonable good faith effort to procure the attendance of a witness. See Barber v. Page (1968), 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (holding that the Confrontation Clause of the Sixth Amendment requires the prosecution to meet this burden); see also United States v. Quinn (6th Cir. 1990), 901 F.2d 522 (holding that attempts to untimely subpoena a witness two days before trial were "singularly unenthusiastic" attempts that did not satisfy the government's burden to show the witness was unavailable).

The Commission Comments to Rule 804, M.R.Evid., indicate "under subdivision (a)(5) that absence from the hearing is allowable only if a proponent is unable to procure attendance by 'reasonable means' and that this is consistent with the Constitutional requirements set out in State v. LaCario, 163 Mont. 511, 515, 518 P.2d 982 (1974)." In the context of the State's seeking to admit deposition testimony of witnesses who were out of state, but not subpoenaed, LaCario set the standard that "[t]he Sixth Amendment to the United States Constitution and Art. II, Section 24 of the Montana Constitution . . . requires a greater exercise of diligence in the attempt to procure personal attendance of a prosecution witness than was demonstrated by the state in this case." LaCario, 518 P.2d at 985. Widenhofer argues that, although the State did subpoena Rothschiller, its last minute unenthusiastic service of the subpoena the night before trial does not constitute a good faith effort.

The Supreme Court has articulated a two-prong test for determining the admissibility of a declarant's out-of-court statement under the Confrontation Clause. Roberts, 448 U.S. at 65. First, "the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant." Roberts, 448 U.S. at 65. The second prong, which only "operates once a witness is shown to be unavailable," involves an inquiry into whether a statement is accompanied by adequate "indicia of reliability." Roberts, 448 U.S. at 66. Therefore, the prosecution bears the burden of demonstrating "unavailability" before a witness' out of court statement may be admitted. Roberts, 448 U.S. at 74-75. In this case, the following

conversation ensued between the court and the State:

COURT: The question is why Rothschiller isn't here. That is what you need to tell me, for the record. Tell me what you've done to get him here, why he isn't here.

. . . .

STATE: Scott Rothschiller was subpoenaed by the State to be a witness in the trial today. And we have information that he was subpoenaed. And we also made several attempts to contact Scott Rothschiller and asked for him to notify him that we were subpoenaing him. We were unable to contact him by phone. But he did receive the subpoena and he is not in attendance today. He did not appear to be a witness. He is--his connection is that he was a passenger in the vehicle and that he is a friend of the defendant and could testify.

COURT: Have you filed the service of the subpoena on him? The return of service, is that in the file?

STATE: The return service has been sent by the sheriff to the Court. And all that we--all that I can file at this point is record by the Great Falls Sheriff's Department that it was served.

COURT: Do you have that?

STATE: Yes. The return service has not been received and I don't have the copy here.

. . . .

COURT: So in talking with them [sheriffs], they told you that they served him?

STATE: Yes.

We conclude that the State laid an insufficient foundation for a finding by the District Court that Rothschiller was "unavailable." The State merely informed the court that it subpoenaed an out-of-town witness the night before trial. It did not relate any other, more timely efforts to procure the witness for trial, nor did it give any explanation as to why the witness did not attend. While we decline the opportunity to set a specific time frame as to what is considered reasonable when determining whether the State has used "reasonable means" to procure the attendance of a witness, we conclude that the State's subpoenaing Rothschiller in Great Falls the night before he was to appear at trial in Helena does not satisfy the State's burden of showing that it used reasonable means to procure his presence.

An essential element of the offense of driving under the influence is proof

that the individual was in fact "driving or in actual physical control of the vehicle." Widenhofer's defense was that he was not driving on the evening of the accident; the only individual other than Widenhofer who could directly testify as to who was driving was Rothschiller. Therefore, Rothschiller's testimony was crucial to the outcome of this case. The hearsay exceptions are meant to be used as tools and have "been explained as arising from necessity . . . ." Barber, 390 U.S. at 722. In this case, the prosecution's use of hearsay testimony was a convenience, not a necessity. The State's minimal efforts to procure Rothschiller do not satisfy its burden of showing he was "unavailable." Although the District Court made inquiries as to the availability of Rothschiller, the court did not make a definitive ruling in that regard nor did it express a basis for denying defense counsel's objections to Officer Zarske's hearsay testimony. As a result, Widenhofer was forced to "only assume that the District Court implicitly ruled that Rothschiller was an unavailable witness under Rule of Evidence 804(a)(5)." Additionally, the State in its response brief failed to respond to Widenhofer's "unavailable witness" argument and, in its confusion over why the District Court admitted the testimony, ventured into the "adoptive statement" exception to the hearsay rule. As set forth above, we hold that there was not a sufficient basis for applying either exception to the general rule proscribing hearsay testimony. Rule 802, M.R.Evid.

"There are few subjects . . . upon which this Court and other courts have been more nearly unanimous than in their expressions of belief that the right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal." Pointer v. Texas (1965), 380 U.S. 400, 405, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923. We conclude that the District Court abused its discretion in allowing Officer Zarske to testify regarding statements allegedly made by Rothschiller indicating who was driving the vehicle on the night of the accident and in so doing, violated the constitutional right of Widenhofer to confront and cross-examine a witness. Affirmed in part and reversed and remanded for a new trial.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ J. A. TURNAGE
/S/ WILLIAM E. HUNT, SR.

/S/   JAMES C. NELSON
/S/   JIM REGNIER
/S/   TERRY N. TRIEWEILER


Justice Karla M. Gray, specially concurring.


I concur in the result the Court reaches on both issues.

With regard to the admissibility of the blood test results, I agree that the District Court's implicit finding that Officer Zarske asserted his authority to arrest with the intention to affect an arrest is supported by substantial credible evidence and is not otherwise clearly erroneous.  My agreement is based on the fact that the officer read the implied consent form which advised Widenhofer that he was under arrest to Widenhofer twice and because physical restraint is not necessary to effectuate an arrest.  It is my opinion, however, that the facts of this case--namely, that Officer Zarske did not write a Notice to Appear while at the hospital and that Officer Zarske told Widenhofer he would be contacted by mail if the blood test results indicated that Widenhofer was under the influence--also would have supported a finding by the District Court that the officer had not asserted his authority to arrest with intention to affect an arrest and a corresponding conclusion, under Thornton, that no arrest had been made in this case.  Nevertheless, because our standard in reviewing a district court's findings is not whether evidence supported a contrary finding, I agree that the District Court did not err in determining--on this record--that Widenhofer was arrested and, as a result, in denying his motion to suppress the blood test results.

With regard to the second issue, I agree entirely with the Court's rationale relating to the inadmissibility of Officer Zarske's testimony regarding Rothschiller's statements to him.  I also agree with the remand for a new trial, because that is the remedy sought by the appellant in this case.  Whether a remand, as opposed to a directed judgment of acquittal or dismissal of the charge, would have been appropriate under the double jeopardy analysis set forth in State v. Warren (1981), 192 Mont. 436, 628 P.2d 292, is a question not presented here.

/S/   KARLA M. GRAY