No. 99-698

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 233

STATE OF MONTANA,

Plaintiff and Respondent,

v.

STEVEN FRANCIS,

Defendant and Appellant.

APPEAL FROM: District Court of the Second Judicial District,

In and for the County of Silver Bow,

The Honorable John W. Whelan, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Chad Wright, Assistant Appellate Defender, Helena, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; Tammy K. Plubell,

Assistant Attorney General, Helena, Montana

Robert M. McCarthy, Silver Bow County Attorney, Butte, Montana

Submitted on Briefs: December 21, 2000

Decided: November 29, 2001

Filed:

_____

Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1 Stephen Robert Francis appeals from the Judgment entered by the Second Judicial District Court, Silver Bow County, convicting him of deliberate homicide. The following issue is dispositive of this appeal: Did the District Court commit reversible error when it admitted Derrick Steilman's out of court statements? We reverse and remand for a new trial.

## BACKGROUND

¶2 On October 2, 1998, the State charged Stephen Francis with deliberate homicide in violation of § 45-5-102(1)(a), MCA. Francis pled not guilty. The day before Francis was charged, Detectives Douglas Conway and Jack Best interviewed Derrick Steilman. During the interview, Steilman informed them that he and Francis had murdered Paul Bischke to prove their worth to each other in conducting other criminal activity. Steilman was offered a plea agreement and his interview was videotaped.

¶3 A trial by jury was held on June 15-17, 1999. The State called Steilman as a witness, but he refused to answer any questions on the ground that he might incriminate himself. The State then sought the admission of out of court statements made by Steilman, including his videotaped interview with the police. The court admitted Steilman's statements. The jury found Francis guilty of deliberate homicide. The District Court sentenced Francis to the Montana State Prison for a term of 100 years and further ordered that Francis would be ineligible for parole or participation in the supervised release program. Francis appeals.

## STANDARD OF REVIEW

¶4 We review a district court's evidentiary rulings to determine whether the court abused

its discretion. *State v. Weitzel*, 2000 MT 86, ¶ 24, 299 Mont. 192, ¶ 24, 998 P.2d 1154, ¶ 24. Francis asserts that we should review the admission of Steilman's out of court statements *de novo* because the District Court "failed to put any explanation on the record for its ruling." We decline to do so. The State offered arguments on the admissibility of Steilman's statements. Francis' attorney countered the State's arguments. The court accepted the State's argument. We see no reason to use a different standard of review under these circumstances.

## DISCUSSION

¶5 Did the District Court commit reversible error when it admitted Steilman's out of court statements?

¶6 The State called Derrick Steilman as a witness in Francis' trial. Steilman, however, refused to answer any questions on the ground that he might incriminate himself. The District Court excused Steilman. The State then sought the admission of out of court statements made by Steilman, including Steilman's videotaped statement to Detectives Conway and Best.

¶7 Counsel for Francis responded that Steilman's out of court statements were inadmissible hearsay and their admission would violate Francis' constitutional right of confrontation. The State noted that it had provided the court with a copy of a "Point Brief" in support of the admission of Steilman's out of court statements. Apparently, the Point Brief had been presented to the court before trial, but the State did not file a copy of the brief with the clerk of court nor did it provide defense counsel with a copy of the brief until defense counsel objected to the admission of Steilman's out of court statements at trial.[1] The State orally argued that Steilman's statements to "lay witnesses" (i.e., statements made to people other than the police) were admissible as statements of a co-conspirator made in furtherance of a conspiracy. Steilman's statements to Detectives Best and Conway, according to the State, were admissible because they were admissions against his penal interest.

¶8 The District Court admitted Steilman's out of court statements but refused to admit the videotape of Steilman's interview with Detectives Conway and Best and refused to admit a transcript of that interview. However, the videotape of Steilman's confession was subsequently shown to the jury pursuant to a motion by defense counsel who stated that, pursuant to the court's ruling on the admissibility of Steilman's out of court statements, the

defense wanted the jury to have an opportunity to observe Mr. Steilman.

¶9 A. Did the District Court err when it admitted Steilman's out of court statements to Shannon Dinius?

¶10 After the District Court's ruling on the admissibility of Steilman's out of court statements, the State called Steilman's former girlfriend Shannon Dinius to testify. Dinius testified that within a week of Bischke's murder, she and Steilman were driving past the scene of the murder and Steilman pointed to it and told her that he and Francis had killed Bischke. Steilman told her that they had masks and weapons and that Francis had struck Bischke first. On cross-examination, Dinius testified that Steilman and Francis did it to "prove themselves to each other, have some kind of like a blood bond-type thing."

¶11 As noted above, the State orally argued to the District Court that Steilman's statements to "lay witnesses" were admissible as statements of a co-conspirator made in furtherance of a conspiracy. The State also maintained in its Point Brief that Steilman's statements to Dinius were admissible as statements against penal interest. On appeal, however, the State concedes that Steilman's statements, to the extent they consisted mainly of blaming Francis, were not admissible. *See State v. Castle* (1997), 285 Mont. 363, 372, 948 P.2d 688, 693 (stating that a declarant's collateral non-inculpatory statements are neither credible nor admissible, particularly when they implicate another person). Furthermore, the State admits the inadequacy of its argument that Francis' statements were admissible as those of a co-conspirator. Co-conspirators' statements made after attainment of the conspiracy's object are not admissible unless the movant can prove an express agreement existed among the co-conspirators to continue to act in concert to cover up the crime after its commission. *See Grunewald v. United States* (1957), 353 U.S. 391, 396-97, 77 S. Ct. 963, 969-70, 1 L. Ed. 2d 931. The State offers no such proof.

¶12 Instead, the State insists that we should affirm the District Court's admission of Dinius' testimony because the court reached the right result even though it employed the wrong reasons. The State contends, for the first time on appeal, that Dinius' testimony was admissible pursuant to Rule 801(d)(2)(A), M.R.Evid. as testimony regarding out of court statements made by Francis. An "admission by party-opponent," under Rule 801(d)(2)(A) is a statement that is "the party's own statement" offered against the party. *State v. Smith* (1996), 276 Mont. 434, 441, 916 P.2d 773, 777. Our function is confined to determining whether there is substantial credible evidence to support the court's findings. *Lacey v. Herndon* (1983), 205 Mont. 379, 387 , 668 P.2d 251, 255. Unfortunately, because the

State did not assert Rule 801(d)(2)(A) to the District Court as a reason to admit Dinius' testimony, there is insufficient evidence on the record for us to ascertain whether Dinius' testimony was admissible as an admission by a party-opponent made by Francis.

¶13 At trial, Dinius first denied talking to Francis about the murder. Later, during cross-examination, Dinius testified as follows:

DEFENSE COUNSEL: Did you ever discuss anything regarding the 1996 homicide with Steve Francis?

DINIUS: No.

DEFENSE COUNSEL: And -

DINIUS: You mean like since then or then when it happened? Because when it had happened, they both had told me. He agreed right along with Derrick. Derrick would tell me, and Steve sat there and agreed with the whole thing.

DEFENSE COUNSEL: And where was this?

DINIUS: In the Bronco.

DEFENSE COUNSEL: You testified that you were alone in the Bronco with Mr. Steilman, didn't you?

DINIUS: Yes.

Defense counsel then proceeded to a different line of questioning.

¶14 Since the State never raised Rule 801(d)(2)(A) before the District Court, the court never reconciled the conflicts in Dinius' testimony concerning whether Francis confessed to Dinius or if he was present when Steilman did so. The court also made no findings concerning statements made by Francis. This record provides an inadequate basis for us to ascertain whether the District Court properly accepted Dinius' testimony under Rule 801(d)(2)(A).

¶15 Alternatively, the State argues that, pursuant to Rule 801(d)(2)(B), M.R.Evid., Dinius' testimony was admissible as testimony concerning out of court statements made by

Steilman and adopted by Francis. Rule 801(d)(2)(B) provides that "[a] statement is not hearsay if ... [t]he statement is offered against a party and is ... a statement of which the party has manifested an adoption or belief in its truth". *See* Rule 801(d)(2)(B), M.R.Evid.; *see also State v. Widenhofer* (1997), 286 Mont. 341, 349, 950 P.2d 1383, 1388. There are two reasons that the State's reliance on Rule 801(d)(2)(B), M.R.Evid., is misguided. First, the District Court failed to make an express determination that Francis adopted Steilman's statements as required. *See Widenhofer*, 286 Mont. at 349, 950 P.2d at 1388 (citing *United States v. Schaff* (9th Cir. 1991), 948 F.2d 501, 505). Second, the State has not presented sufficient evidence to show that Francis adopted Steilman's statements. It is, at best, unclear whether Francis was even in the car at the time Steilman made the alleged statements. Given that the District Court made no findings on this matter, we cannot conclude that the court properly admitted Dinius' testimony as statements made by Steilman and then adopted by Francis.

¶16 We will affirm a district court's decision when it reaches the correct result for the wrong reasons. *See State v. Veis*, 1998 MT 162, ¶16, 289 Mont. 450, ¶16, 962 P.2d 1153, ¶16. In this case, however, the record is insufficiently developed for us to entertain the State's new rationale. Therefore, we must conclude that the District Court erred in admitting Dinius' testimony regarding Steilman's out of court statements.

¶17 B. Did the District Court err when it admitted Steilman's out of court statements to Detective Conway?

¶18 After noting defense counsel's continuing objection to the admission of Steilman's out of court statements, the court allowed Detective Conway to testify about an interview he conducted with Steilman. Detective Conway testified that he conducted an interview of Steilman on October 1, 1998. According to Detective Conway, Steilman stated that he and Francis killed Bischke in order to prove their worth to each other to conduct other criminal activity. Steilman stated that he was armed with a wooden dowel and Francis was armed with an octagon-shaped crowbar. Steilman claimed that Francis inflicted the blows to Bischke.

¶19 On the next day of testimony, Francis' attorney moved to admit the videotape of Steilman's confession. Defense counsel stated that pursuant to the court's ruling on the admissibility of Steilman's out-of-court statements, the defense wanted the jury to have an opportunity to observe Mr. Steilman. Defense counsel also requested that the court note its continuing objection to the admission of Steilman's out of court statements. The videotape

was played for the jury.

¶20 As noted above, the State argued that Steilman's statements to Detectives Best and Conway were admissible because they were admissions against his penal interest. The State properly concedes on appeal that Steilman's confession was not admissible pursuant to Rule 804(b)(3), M.R.Evid., as statements against his penal interest. In *Castle*, we stated that the fact that "portions of a declarant's confession are admissible because they are self-inculpatory, however, does not necessarily make the collateral non-inculpatory statements either credible or admissible, particularly where the declarant implicates another person." *Castle*, 285 Mont. at 372, 948 P.2d at 693. In the instant case, Steilman's confession consisted mainly of blaming Francis. Since the only basis for admitting Steilman's confession was the erroneous application of Rule 804(b)(3), M.R.Evid., we hold that the District Court erred in admitting Steilman's confession.

¶21 C. Does the District Court's erroneous admission of Steilman's out of court statements to Dinius and to the police require a reversal of Francis' conviction?

¶22 We now turn our attention to whether the admission of Steilman's out of court statements in violation of the Montana Rules of Evidence requires reversal. Section 46-20-701(1), MCA, provides:

> Whenever the record on appeal contains any order, ruling, or proceeding of the trial court against the convicted person affecting the convicted person's substantial rights on the appeal of the cause, together with any required objection of the convicted person, the supreme court on that appeal shall consider the orders, rulings, or proceedings and the objections thereto and shall reverse or affirm the cause on the appeal according to the substantial rights of the respective parties, as shown upon the record. A cause may not be reversed by reason of any error committed by the trial court against the cnvicted person unless the record shows that the error was prejudicial.

¶23 We recently restated our analysis under § 46-20-701, MCA, in *State v. Van Kirk*, 2001 MT 184, 306 Mont. 215, 32 P.3d 735. The first step in our reversible error analysis requires us to determine whether the error complained of is a "structural" error or a "trial" error. *Van Kirk*, ¶ 37. Structural error affects the framework within which the trial proceeds, rather than simply an error in the trial process itself. *Van Kirk*, ¶ 38. Examples of structural error referred to in *Van Kirk* include errors in the jury selection process, total

deprivation of the right to counsel, and lack of an impartial trial judge. *See Van Kirk*, ¶ 39; *see also State v. LaMere*, 2000 MT 45, ¶ 23, 298 Mont. 358, ¶ 23, 2 P.3d 204, ¶ 23 (providing further examples of structural error). Structural error is presumptively prejudicial, requiring automatic reversal and thus ending our inquiry. *See Van Kirk*, ¶ 39; *LaMere*, ¶ 23. Trial error is that type of error that typically occurs during the presentation of a case to the jury. *Van Kirk*, ¶ 40. Such error is amendable to qualitative assessment by a reviewing court for prejudicial impact relative to the other evidence introduced at trial and thus does not require automatic reversal. *Van Kirk*, ¶ 40. The erroneous admission of evidence, such as occurred here, is the classic example of a trial error. *See Van Kirk*, ¶ 48 (concluding that the erroneous admission of the results of a horizontal gaze nystagmus, or HGN test, was trial error); *State v. Whipple*, 2001 MT 16, ¶ 26, 304 Mont. 118, ¶ 26, 19 P.3d 228, ¶ 26 (reviewing erroneous admission of hearsay evidence under harmless error standard).

¶24 Because the error complained of here is a trial error, the analysis proceeds to the second step, which involves the determination of whether, under the circumstances, the error was harmless. *See Van Kirk*, ¶ 41. In order to do this, the State must demonstrate that there is no reasonable possibility that the inadmissible evidence might have contributed to the verdict. *See Van Kirk,* ¶ 47. In reaffirming this principle, we stated in *Van Kirk* that we were abandoning the "overwhelming evidence" test in favor of the "cumulative evidence" test because, although unquestionably more restrictive, the cumulative error test would bring us closer to gauging the potentially prejudicial impact of the evidence. *Van Kirk*, ¶ 43. In bearing its burden under the cumulative evidence standard, the State must direct us to admissible evidence that proved the same facts as the tainted evidence proved and, qualitatively, the tainted evidence would not have contributed to the verdict. In those cases in which no such cumulative evidence was presented, and the tainted evidence went to the proof of an element of the crime charged, the court's decision must be reversed. In those cases in which no such cumulative evidence was presented, and the tainted evidence did not go to the proof of an element of the crime charged, the State must demonstrate that, qualitatively, there is no reasonable possibility that the tainted evidence might have contributed to the defendant's conviction. *Van Kirk*, ¶ 44.

¶25 In the instant case, Francis was charged with "purposely or knowingly [causing] the death of another human being." *See* § 45-5-102(1)(a), MCA. The State offered Steilman's out of court statements to his girlfriend, Dinius, and to the police to prove an element of homicide: that Francis purposely killed Paul Bischke. Dinius testified that Steilman pointed to the murder scene and told her that he and Francis killed Bischke. Detective

Conway testified that Steilman told him that he and Francis used a wooden dowel and crowbar to kill Bischke in order to prove their worth to each other to conduct further criminal activity and that Francis inflicted the lethal blows. Therefore, the State must demonstrate that (a) it presented other admissible evidence demonstrating the "purposely caused the death" element of the crime charged, *and* (b) that, qualitatively, no reasonable possibility exists that the tainted evidence might have contributed to Francis' conviction. *See Van Kirk*, ¶ 48.

¶26 The State argues that Steilman's out of court statements were cumulative to the evidence already presented to the jury. The State notes that those portions of Steilman's statements in which he implicated himself were admissible as statements against his penal interest. The State also observes that various witnesses testified that Francis and Steilman were virtually inseparable and lived together at the time of Bischke's death. Valerie Smelich, Francis' girlfriend, testified that Francis had a clipping of a newspaper account of the homicide in his wallet, that he confided in her that he and Steilman had killed Bischke for fun and to see if they could keep a secret. The State also observes that both Francis and Steilman disclosed their involvement in the homicide to Lani Nakamura, one of Steilman's former girlfriends. Francis discussed his involvement with Joseph Juchemich, his roommate at the time of his arrest, and Kevin Sheffield, his neighbor. Lastly, the State notes that Francis himself admitted that he told various people that he had participated in Bischke's death, even though he told the jury he made these admissions only to impress women and instill fear into others.

¶27 We agree that the foregoing testimony sufficiently establishes that the State presented other cumulative admissible evidence regarding Francis' purposeful participation in the killing of Paul Bischke. Francis' disclosures to various other people that he and Steilman purposely killed Bischke were cumlative admissible evidence on this element of the offense.

¶28 Finally, the State must also prove that, qualitatively, no reasonable possibility exists that the tainted evidence might have contributed to Francis' conviction. *See Van Kirk*, ¶ 48. We noted by way of example in *Van Kirk* a few situations in which the State would be hard-pressed to demonstrate that erroneously admitted evidence did not contribute to a conviction. The first example we cited involved the erroneous admission of an involuntary confession in a prosecution for robbery even though there was other evidence tending to prove that the defendant committed the crime. *Van Kirk*, ¶ 45. In another example, we stated that it would be virtually impossible to prove that evidence presented in a DUI case

that the defendant was a convicted child molester did not contribute to the DUI conviction because of the highly inflammatory nature of the evidence. *Van Kirk*, ¶ 46.

¶29 In the instant case, the State asserts that the inadmissible statements were "inconsequential" in light of all the cumulative admissible evidence. However, we do not believe the resolution of this case is quite so clear. On the one hand, we have the admissible portions of Steilman's confession in which he admitted that he participated in killing Bischke, the fact that Steilman and Francis were close friends and roommates at the time of the murder, that Francis had a newspaper article regarding the murder in his wallet, and Francis' admission that he told other people he had participated in the homicide along with Steilman. However, on the other hand we have the erroneously admitted hearsay evidence that Steilman stated that both he and Francis killed Bischke, that Francis dealt the lethal blows, and Francis' contention that he told other people that he participated in the murder because he wanted to intimidate or impress them.

¶30 Although this case presents a very close call, we are forced to conclude that there is a reasonable possibility that the erroneously admitted testimony of Steilman's out of court statements implicating Francis might have contributed to the verdict. We note that the test is not whether it was unlikely that the erroneously admitted evidence actually contributed to the verdict, but whether there was a "*reasonable possibility* that the inadmissable evidence *might have* contributed to the conviction." *Van Kirk,* ¶ 47 (emphasis added). An erroneously admitted hearsay statement by an admitted participant in a murder that the defendant also participated in the murder and that the defendant was the one who inflicted the lethal blows is qualitatively very damning, especially in light of the complete absence of any other direct evidence of the defendant's participation (e.g., other admissible eyewitness testimony, a confession, or other physical evidence). Accordingly, we must admit that there is a reasonable possibility that Steilman's confession implicating Francis might have contributed to Francis' conviction.

¶31 Reversed and remanded for a new trial.

/S/ JIM REGNIER

We Concur:

/S/ KARLA M. GRAY

/S/ TERRY N. TRIEWEILER

/S/ JAMES C. NELSON

/S/ W. WILLIAM LEAPHART

1. Francis does not argue that the State's submission of its Point Brief to the District Court prior to trial without contemporaneously serving him with a copy constitutes a separate basis for reversal. Rather, Francis maintains that "the *ex parte* Point Brief in this case must be considered as part of the entire trial process and in conjunction with other admitted trial errors."