

DA 10-0058

IN THE SUPREME COURT OF THE STATE OF MONTANA

2010 MT 255

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

JEFFREY LANE SCHUBERT,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DC 09-128A
Honorable Holly Brown, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Katie Olson, Jasper Smith Olson P.C.; Missoula, Montana

      For Appellee:

          Steve Bullock, Montana Attorney General; Matthew T. Cochenour,
Assistant Attorney General; Helena, Montana

          Marty Lambert, Gallatin County Attorney; Erin Murphy, Deputy County
Attorney; Bozeman, Montana

Submitted on Briefs:  September 23, 2010

Decided:  December 7, 2010

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Defendant Jeffrey Lane Schubert appeals from the order of the Eighteenth Judicial District, Gallatin County, denying his motion to suppress evidence and dismiss the charge of Driving Under the Influence of Alcohol (DUI), first offense, a misdemeanor. We affirm. We restate the issue on appeal as follows:

¶2 ***Did the District Court err in denying defendant's motion to suppress evidence and dismiss on the ground that he was unlawfully arrested by a citizen?***

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 On August 8, 2008, Shirley Richards (Shirley), a road construction flagger, was working the night shift on a construction project on Highway 191, in Gallatin County. Shirley was responsible for controlling traffic flow across a bridge on which construction workers were working. One lane across the bridge had been closed for construction work, and traffic was being routed through the remaining open lane. Shirley was stationed at the south end of the bridge, directing northbound traffic. About 800 to 900 feet south of Shirley's station was a bend in the road, around which Shirley could not see. Shirley wore a reflective vest and pants, construction hat, safety goggles, and held a six-foot long stop/slow traffic sign to aid in directing traffic.

¶4 About 2:00 a.m., Shirley received a radio call from Amanda Richards (Amanda), another flagger on the construction project, who was stationed south of Shirley at a position approximately 1000 to 1500 yards south of the Half Moon Bar. Amanda was Shirley's daughter. Amanda called Shirley to advise her to be on the lookout for a

vehicle coming her way which she believed to be operated by a drunk driver. Amanda described the vehicle as a blue and white, or blue and silver, Ford pickup truck.

¶5     About 8 to 10 minutes after receiving Amanda's call, during which time Shirley permitted other traffic to pass through the construction zone, Shirley observed the headlights of a vehicle round the bend in the road south of the bridge and advance toward her station. She saw the vehicle swerve repeatedly across both lanes of the road. Shirley became alarmed about the safety of the workers on the bridge, testifying that "I'm out there to protect people and he scared me." She observed that the vehicle matched the description conveyed by Amanda. Based on her observations, she signaled for the vehicle to stop, made contact with the driver, and asked him to pull over. The driver was later identified by law enforcement as Schubert.

¶6     In accordance with her training as a flagger and the policies of the construction company, Shirley contacted her supervisor, Gordon Doig. Doig called 911 and reported the incident, the recording of which was played during the hearing on the motion. The dispatcher asked questions of Doig which he conveyed to Shirley by radio and then relayed the answers to the dispatcher. Doig told the dispatcher that the vehicle was "all over the road." He informed the dispatcher that he was not sure how long the vehicle would remain stopped at the flagging station. Doig identified himself and Shirley to the dispatcher and provided the location and a description of the stopped vehicle, also stating that he and Shirley would be willing to sign a complaint against the driver. The

dispatcher advised Doig that an officer would be sent to the scene, and Doig then drove to Shirley's station.

¶7     After Shirley asked Schubert to pull over, she noticed the smell of alcohol when she walked up to the truck and while she was talking with Schubert. She noted that Schubert's speech was "a little slurred." She testified that she gave Schubert a cup of coffee, while Schubert testified "I never had a cup of coffee." Shirley and Schubert conversed as she directed other vehicles to pass through the construction zone. She remained near his truck for the time it took law enforcement to arrive. Schubert believed it would have been unsafe to leave for fear of striking Shirley. Shirley testified that she "told [Schubert] he could leave at any time," and that if he wanted to leave, he could have done so. Schubert testified that after leaving the Half Moon Bar at about 2:00 a.m., he did not swerve or otherwise drive erratically. He testified that, after Shirley stopped him and requested that he pull over, she advised him that law enforcement had been contacted, and that she "told me I was not allowed to leave."

¶8     Gallatin County Deputy Sheriff Chad Gunlikson was on routine patrol that night and received a dispatch call around 2:20 a.m. advising him that construction workers on Highway 191 had reported a possible drunk driver. He arrived at the scene at about 2:36 a.m. and observed a blue and white Ford pickup truck stopped on the side of the road with a construction flagger standing in close proximity. Gunlikson made contact with the flagger, Shirley, who identified herself and informed him that she was the person who reported Schubert. Gunlikson approached the driver, identified him as Schubert, and

4

immediately noticed the odor of alcohol coming from the truck. He further noted that Schubert had red, glassy eyes, slurred speech, and had difficulty retrieving his driver's license from his wallet. Gunlikson began a DUI investigation, leading to a determination that Schubert's blood alcohol content was above 0.19.

¶9 Schubert was charged in Gallatin County Justice Court with DUI and filed a combined motion to suppress all evidence seized and dismiss the charge on the basis that he had been unlawfully detained by Shirley. The Justice Court denied the motion, and Schubert pled guilty in Justice Court, reserving his right to appeal the denial of his motion to the District Court pursuant to § 46-12-204(3), MCA, and was sentenced. His appeal was limited to the issues raised in his motion. He argued to the District Court that Shirley's actions affected a citizen's arrest which was not supported by probable cause as required by § 46-6-502, MCA (2007), thus requiring the suppression of all evidence obtained as a result of the arrest and dismissal of the charge. The District Court held hearings on the motion at which Shirley, Doig, Gunlikson, and Schubert testified. The District Court issued a written order denying Schubert's motion, concluding that while Schubert was placed under arrest by Shirley, Shirley had probable cause to believe that Schubert was committing the offense of DUI, including the report from Amanda, and thus lawfully arrested Schubert. The District Court stayed the judgment pending Schubert's appeal to this Court.

**STANDARD OF REVIEW**

¶10    We review the denial of a motion to suppress evidence by a district court to determine "whether the court's findings of fact are clearly erroneous and whether they are correctly applied as a matter of law." *State v. May*, 2004 MT 45, ¶ 8, 320 Mont. 116, 86 P.3d 42 (citing *State v. Courville*, 2002 MT 330, ¶ 14, 313 Mont. 218, 61 P.3d 749).

**DISCUSSION**

¶11    ***Did the District Court err in denying defendant's motion to suppress evidence and dismiss on the ground that he was unlawfully arrested by a citizen?***

¶12    Schubert argues that the District Court erred as a matter of law by concluding that a citizen making an arrest can rely upon another citizen's report, and by determining that Amanda's report, coupled with Shirley's observations, constituted probable cause for a citizen's arrest, as required by § 46-6-502(1), MCA (2007).  The State argues, first, that Schubert was not actually "detained" in a manner constituting an arrest, and asks that we affirm the District Court for reaching the right result for the wrong reasons.  Alternatively, the State argues that if an arrest did occur, it was supported by probable cause and thus lawful.  The State argues that, under our case law, a citizen can rely upon another citizen's report when making a citizen's arrest.

¶13    The Fourth Amendment to the United States Constitution and Article II, Section 11 of the Montana Constitution protects citizens against unreasonable searches

6

and seizures. Arrests by a citizen are authorized by statute, which provided, at the time of the incident here,[1] as follows:

> (1) A private person may arrest another when there is probable cause to believe that the person is committing or has committed an offense and the existing circumstances require the person's immediate arrest.
> (2) A private person making an arrest shall immediately notify the nearest available law enforcement agency or peace officer and give custody of the person arrested to the officer or agency.

Section 46-6-502, MCA (2007). Consistent with the approach this Court took in analyzing this statute in *May, see e.g., May,* ¶¶ 13, 18, the District Court first considered "whether an arrest actually occurred," and secondly, "whether the private citizen had probable cause to support the arrest."

*Arrest*

¶14     In determining whether an individual has been arrested, we look to three factors: "(1) authority to arrest; (2) assertion of that authority with intention to affect an arrest; and (3) restraint of the person arrested." *May,* ¶ 13 (citing *State v. Widenhofer,* 286 Mont. 341, 347, 950 P.2d 1383, 1386 (1997)). The parties contest factor three, under which "the test is whether a reasonable person, innocent of any crime, would have felt free to walk away under the circumstances." *May,* ¶ 13 (citing *Widenhofer,* 286 Mont. at 347, 950 P.2d at 1386-87). Schubert argues that a reasonable person in his position would not have felt free to leave and that the District Court correctly concluded that he was arrested. The State argues the court erred in its application of factor three because

---

[1] Section 46-6-502, MCA, was amended effective April 27, 2009, in a manner not relevant to this matter, adding under (1) that "[t]he private person may use reasonable force to detain the arrested person." Section 46-6-502(1), MCA (2009).

Schubert was not restrained at the construction site and that, under the facts here, a reasonable person would have felt free to drive away.

¶15 Evidence admitted at the hearing reflected uncertainty on the part of the construction workers as to whether Schubert would remain at the location following the stop. The District Court found that "Doig informed the dispatcher that he was not sure how long the vehicle would remain stopped at the flagging station." The relevant portion of the recording of Doig's 911 call, admitted at the hearing, contained the following:

> [Dispatcher]: And a flagger's got him pulled over?
>
> [Doig]: They've got him pulled over now but I don't know how long he'll stay there. He said it wasn't going to happen that he was staying, so.

Testimony was undisputed that Shirley and Schubert conversed after Schubert pulled off the road, and no testimony indicated that Schubert attempted to leave the scene and was prevented from doing so. Gunlikson testified that Schubert commented about Shirley that "they were getting along fine." When Gunlikson was asked whether Schubert had said anything about why he was waiting by the side of the road, Gunlikson stated "[h]e said something along the lines that he wasn't."

¶16 Yet, Schubert did wait for about 25 minutes for Gunlikson to arrive. And, the testimony was conflicting regarding the statements made by Shirley and Schubert at the scene, with Shirley testifying that she had told Schubert he could leave, and Schubert testifying that Shirley had told him he must remain. The District Court recited these statements, but did not resolve the factual conflict. While we entertain doubt about the District Court's conclusion that an arrest was effectuated, the failure to definitively settle

8

all of the factual questions makes it difficult to resolve the question. Further, we are cognizant of § 61-8-105, MCA, which makes it a criminal offense to "willfully fail or refuse to comply with a lawful order or direction of a . . . flag person . . . pertaining to the use of the highways by traffic." Schubert may have felt a compulsion to remain, given Shirley's status as a flagger. In any event, we deem it appropriate to assume, arguendo, that an arrest occurred and turn to the question of whether the arrest was supported by probable cause.

*Probable Cause*

¶17 The parties cite to *May* for its assessment of probable cause under § 46-6-502, MCA, and its statement that "[t]he test applicable to a private citizen arrest is whether a reasonable person, under personally known facts and circumstances, is warranted in believing that someone is committing or has committed an offense." *May*, ¶ 18 (citing *State v. Williamson*, 1998 MT 199, 290 Mont. 321, 965 P.2d 231). *May*, in turn, cited *Williamson* as authority for this statement. *Williamson* was the first case to enunciate a standard for a probable cause determination under the version of § 46-6-502, MCA, which was revised in 1991. Prior to 1991, the statute required a citizen's arrest for non-felony offenses to be based on "*reasonable grounds* that an offense is being committed or attempted *in his presence*." Section 46-6-502(1), MCA (1989) (emphasis added). In the 1991 revision, the "in his presence" language was deleted, and "reasonable grounds" was

9

replaced with "probable cause," among other changes.[2] Laws of Montana, 1991, ch. 800, § 40, at 3027.

¶18    In *Williamson*, we considered a DUI stop made in Montana by an out-of-jurisdiction officer. *Williamson*, ¶¶ 13-14.  We explained that "a law enforcement officer is a peace officer at all times . . . but may act as a peace officer only when acting within the scope of his or her authority," and therefore concluded that the out-of-jurisdiction officer "was limited to the authority provided to private citizens under § 46-6-502, MCA, and was required to have probable cause to stop Williamson." *Williamson*, ¶¶ 19-20.  In applying the citizen arrest statute, we stated that "probable cause is established if the facts and circumstances within an officer's personal knowledge, *or related to the officer by a reliable source*, are sufficient to warrant a reasonable person to believe that another person is committing or has committed an offense."  *Williamson*, ¶ 21 (emphasis added) (citing *Jess v. State, Dept. of Justice, Motor Vehicle Div.*, 255 Mont. 254, 261, 841 P.2d 1137, 1141 (1992), *overruled on other grounds*, *Bush v. Mont. Dept. of Justice, Motor Vehicle Div.*, 1998 MT 270, ¶¶ 9-11, 291 Mont. 359, 968 P.2d 716; *State v. Schoffner*, 248 Mont. 260, 264, 811 P.2d 548, 551 (1991)).  After analyzing both the information received from the citizen report and the out-of-jurisdiction officer's own observations, we

---

[2] Other such changes included eliminating the felony-misdemeanor distinction and adding that "the existing circumstances require the person's immediate arrest," § 46-6-502(1), MCA (1991), and within § 46-6-502(2), MCA (1991), that private persons making an arrest "shall immediately notify the nearest available law enforcement agency or peace officer and give custody of the person arrested to the officer or agency."  Laws of Montana, 1991, ch. 800, § 40, at 3027; *see also* Commission Comments to § 46-6-502, MCA (1991).

10

concluded that the officer did not have probable cause to stop Williamson as required by the statute. *Williamson*, ¶¶ 22, 31-36.

¶19 No citizen report was involved in the arrest at issue in *May*, and our summary of the test there made no reference to our statement in *Williamson* that probable cause could include information received from a reliable source. *See May*, ¶¶ 18-19. Nonetheless, *Williamson's* reference to information provided by a reliable source and our analysis of the third party report in that case was consistent with the changes in the statute made by the 1991 Legislature, including removal of the requirement that non-felony offenses occur in the citizen's presence. It is also consistent with general notions of probable cause, inserted into the statute by the 1991 revisions, which require consideration of all facts and circumstances. *See Williamson*, ¶ 31 ("A probable cause determination must be based on all the facts and circumstances within the officer's knowledge . . . .") (citations omitted). While we can easily conceive of circumstances where a citizen's arrest based upon third party information would lack probable cause, we cannot conclude that the District Court erred, as a matter of law, by holding in reliance upon *Williamson* that "reports of citizen informants may be taken into consideration" when determining whether a private citizen's arrest had the requisite probable cause under § 46-6-502, MCA.

¶20 Further, as the District Court acknowledged, such information must come from a reliable source. The court noted that Amanda was a construction flagger known to Shirley and stationed within sight of the Half Moon Bar. She appeared to have

11

personally observed the vehicle, then described the vehicle and conveyed this information and her impression that the driver was "driving drunk" to Shirley. While concluding that Amanda's report did not solely establish probable cause that Schubert was committing DUI, the court nonetheless credited her report as providing a suspicion that an offense was being committed, and determined it was appropriately considered in the assessment of probable cause.

¶21 The record before the District Court reveals that Shirley worked as a flagger on the night shift of a construction project. Her duties involved monitoring and directing traffic through a bridge project where traffic had been reduced to one lane. On the night in question, construction workers were working on the closed lane of the bridge. Around 2:00 a.m., she received a called from Amanda, another flagger on duty that night with whom she was personally acquainted, alerting her to a possible drunk driver and providing a description of the vehicle. Shirley knew Amanda's station was located within sight of the Half Moon Bar. Shirley testified that she was "looking" for the vehicle in response to the call and approximately eight to ten minutes later, she observed headlights coming around the bend from Amanda's direction. The District Court found that Shirley observed this vehicle swerve across both lanes of the road at least three times.[3] The vehicle's actions in approaching her station caused Shirley to be fearful for the safety of the construction workers. Specifically, Shirley testified that upon seeing the

---

[3] The District Court's statement that Shirley "observed the truck swerve across the lanes of travel at least three times" is contained in the paragraphs of its order denominated as conclusions of law, but was clearly a factual determination upon which the court based its legal conclusions.

vehicle's swerving, she "hollered in the radio" and said an expletive. Schubert himself testified that when he came around the corner in the road and saw Shirley "she basically froze like a deer in the headlights." Shirley observed that the swerving vehicle matched the vehicle previously described by Amanda. Based on Amanda's report and these observations, Shirley then stopped the vehicle and asked the driver to pull off to the side of the road.

¶22 At that point, Shirley had probable cause to believe the offense of DUI was being committed. After receiving a report about a possible drunk driver, she observed the described vehicle being operated dangerously and with clear manifestations of an impaired driver. We conclude that the District Court did not err in determining that Shirley had probable cause to initiate a citizen's arrest of Schubert for DUI, pursuant to § 46-6-502, MCA (2007).

¶23 Affirmed.

/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS